[No. 36070.   En Banc.   February 28, 1963.]

A. F. GREIN *et al., Respondents,* v. GEORGE CAVANO *et al.,*
*Appellants.**

*MacDonald, Hoague & Bayless (Kenneth A. MacDonald,*
of counsel), for appellants.

*Allen, DeGarmo & Leedy,* for respondents.

DONWORTH, J.—This is an appeal from a judgment award-
ing attorneys' fees and costs to respondents.

*Reported in 379 P. (2d) 209.

This is the final chapter in the litigation which was initiated by four members of Local No. 174 of the Teamsters' Union on February 6, 1957, against the union and two of its officers.

The trial judge in his memorandum opinion summarized the original pleadings as follows:

"The complaint, filed February 6, 1957, alleged that plaintiffs had made written demands on defendant Cavano, acting secretary-treasurer of defendant Local 174, for a full statement of the assets and liabilities, receipts and disbursements of the Local for the year 1955; that Cavano had given partial answers which contained certain discrepancies, but at no time furnished a complete financial statement; that large amounts of money belonging to the Local had been disbursed for unauthorized purposes; that defendant International Brotherhood had referred plaintiffs' inquiry to Local 174; and that plaintiffs had no remedy other than a court action. The complaint prayed for the following relief: that the books of the Local be produced for audit, that the International be restrained from seizing the books; that plaintiffs have judgment for their costs and attorney fees; that the court retain jurisdiction of the cause and make such orders as necessary to obtain a full accounting, including the appointment of a receiver, and for general relief.

"Defendant International did not appear, but the other defendants filed their answer on March 11, 1957, admitting the correspondence between the parties but denying all other material allegations of the complaint. The answer alleged four affirmative defenses which are thus summarized in defendants' brief:

" '(a) Plaintiffs' complaint fails to allege facts sufficient to constitute a cause of action against the defendants.

" '(b) Plaintiffs had failed to exhaust certain remedies afforded to them under the constitutions of the local and international.

" '(c) This court is without jurisdiction to grant the relief asked by plaintiffs.

" '(d) This action is barred by the judgment entered in a prior action.'

Defendants prayed dismissal. The reply, filed March 14, 1957, admitted certain allegations in the affirmative defenses, and denied the balance.

"On the same day the parties stipulated that the court should enter an order requiring the defendants (other than

the International) to make available the books and records of Local 174 for the years 1955 and 1956 for audit by Price Waterhouse & Company; that 'the auditors shall proceed in accordance with this Order, and shall examine and report each expenditure of funds of defendant Local No. 174 during the years 1955 and 1956, together with the support therefor'; that the fees and costs of the audit should be paid by Local 174, and that none of the parties should be deemed to have waived any of their rights, claims or defenses by the stipulation. An order accordingly was signed by Judge Birdseye on March 21, 1957."

Price, Waterhouse & Company, on June 20, 1957, reported regarding their examination of the union's books and records relative to the expenditure of its funds during the years 1955 and 1956, stating:

". . . Since officials of the Local advised us that invoices in support of disbursements had not been retained for those years, our examination was directed primarily to the preparation of summarizations of disbursements."

On October 10, 1957, respondents petitioned for the appointment of a receiver alleging that the auditors

". . . had made the examination ordered by Judge Birdseye, but since the invoices had been destroyed by the defendants, it was impossible to make an audit or to examine the support for disbursements of funds; that the examination of the auditors was therefore directed primarily to summaries of disbursements; that large amounts of money (over $100,000.00) had been paid out without discoverable authority; that the executive officers of the union were holding over beyond the terms of office fixed by the constitution of Local 174; that no accounting had been rendered, that no appeal to defendants would be effective, and that there was no provision of the International Constitution which would provide relief to members of the Local seeking an accounting, and that their funds were in danger. Plaintiffs alleged that it was therefore necessary to appoint a receiver to secure justice to the plaintiffs and the other members of the union."

Appellants' motion for a summary judgment of dismissal and respondents' petition for the appointment of a receiver were heard November 21, 1957. Appellants' motion was denied.

The request of appellants' counsel for a continuance to permit the filing of an answer to the petition for a receiver was granted.

On December 6, 1957, appellants' answer was filed in which the factual matters stated in the Price Waterhouse report were admitted and respondents' allegations were denied. It was affirmatively alleged that respondents had failed to exhaust their intra-union remedies. The prayer was for dismissal of the action.

The proceedings related to the appointment of the receiver are described in the trial court's memorandum opinion as follows:

"On December 18th and 19th [1957], the cause was tried on the foregoing pleadings and the evidence introduced by both parties. All claims and defenses were fully argued and supported with briefs. The court took the matter under advisement, and on February 7, 1958, filed its memorandum decision, which expressly stated: 'All arguments and claims of the parties have been given thorough study and consideration.' The first point decided was the affirmative defense of *res judicata*, which was presented in defendants' original answer filed March 11, 1957, and which was not even mentioned in their answer to the receivership petition. The opinion then proceeds to discuss and decide all the other contested issues raised in the pleadings and ready for adjudication. These rulings were incorporated in the findings, conclusions and Order Appointing Receiver entered February 28, 1958. In substance these rulings were that the plaintiffs were entitled to bring this suit, that the failure of defendants to keep invoices and supporting records made an audit practically impossible for the years in question, that disbursements of union funds had been made for which no authority had been shown, that the Local's books of account were inadequate to protect the rights of the members, that the secretary-treasurer and vice-president were illegally holding office beyond the terms for which they were elected, and that a receiver with limited powers should be appointed to take temporary custody of the funds until a secretary-treasurer could be elected by the membership, to conduct an election, to set up a proper bookkeeping system, and to report to the court. (See Memorandum Decision, Findings of Fact No. V to XV, inclusive, Conclusions of Law II and III, and Order Appointing Receiver.) It

should be noted in this connection that the Price Water-house report was incorporated in the findings by reference (Finding XI). Both the findings and the order state in their preliminary recitals that 'all claims and defenses were fully argued. . . .' and that the court 'considered the files and records herein, the testimony. . . .', etc.

"From a consideration of all the pleadings and of the rulings thereon, it should be clear beyond cavil that every issue then ripe for adjudication was tried on December 18 and 19, 1957, and that the court decided them all. Specifically, on the complaint for accounting, the court held that plaintiffs were entitled to one, but that defendants' failure to keep proper records made an audit impossible, so that the Price Waterhouse report was the only financial information within practical reach. The order to set up a proper bookkeeping system was designed to make future accounting possible, and to offer some protection against unauthorized expenditures. Defendants' affirmative defenses (a) and (c) above referred to, relating to the sufficiency of the complaint and the jurisdiction of the court, were obviously denied by the findings and order in favor of plaintiffs. Defense (b), alleging failure to exhaust remedies within the union, was denied by Findings V to IX, inclusive. Defense (d), that the suit was barred by a prior action, was denied by Finding XV.

"Thus it appears that every single issue which defendants in their brief claim was not disposed of, was in fact tried out and decided in the trial of December 18 and 19, 1957. Careful scrutiny of all of the pleadings discloses no other issue then ripe for decision which was not then disposed of.

"The only issues suggested in the pleadings and not then decided were plaintiffs' prayers that the receiver, when appointed, investigate each and every expenditure made in the years 1955 and 1956, and bring suit, subject to court approval, to recover improper disbursements; that the receiver be allowed his expenses, and the plaintiffs their attorney fees and costs. It is not claimed that these issues could then have been tried. Obviously, they could not until after the receiver had been appointed and had carried out his duties under the order of appointment.

"But it is argued that the 'underlying accounting action' could thereafter have been further prosecuted, and the issues relating to attorney fees made ready for decision, and that the failure to do so renders the cause subject to dismissal. Aside from the fact that there was no such 'under-

lying action', as above demonstrated, the appeal taken by defendants effectively prevented any further proceedings in this court. The Order Appointing Receiver was entered February 28, 1958. On the same day defendants filed their notice of appeal to the Supreme Court from that order, 'and from each and every part thereof', and thereafter filed a supersedeas bond. The filing of the notice of appeal, followed by the bond, transferred jurisdiction of the cause to the Supreme Court, and effectively prevented any further proceedings in the cause during the pendency of the appeal: [Citations omitted.] The appeal was pending and the Supreme Court had exclusive jurisdiction continuously from February 28, 1958, to December 7, 1960, excepting only that on June 18, 1959, the Supreme Court remanded the cause to the superior court for the limited purpose of taking testimony on the issue of mootness, with instructions to report back."

As stated by the trial court, an appeal was immediately taken by appellants to this court from the trial court's order of February 28, 1958, appointing a receiver. They filed in this court a motion to remand the action and to dismiss because of mootness. The case was argued before Department Two on May 22, 1959, and on June 18, 1959, this court remanded the case to the trial court to hear evidence on the issue of mootness. This matter was heard by Judge Agnew who made a written report and findings, which were transmitted to this court. Judge Agnew found as follows:

"I. While the appeal from the order appointing a receiver pendente lite was pending in the Supreme Court, an election of officers was held by Local 174. Such election was held in accordance with the union's constitution and by-laws, and was honestly and fairly conducted.

"II. A proper bookkeeping system has been installed in said Local 174 by Price Waterhouse & Company, accountants.

"III. The attorneys for the plaintiffs herein have earned fees to date in the sum of $5,450.00, and have expended costs in the sum of $464.25, most of which costs are taxable. The court finds that such fees are reasonable, but has not considered the question of whether or not defendants are liable in any way to pay such fees."

Appellants' motion was again argued before Department Two of this court on January 22, 1960, and Judge Agnew's

findings were accepted as verities. However, the Department was unable to finally decide the issue of mootness and the motion was set for hearing en banc on May 27, 1960. As a result of this hearing, this court, on October 17, 1960, entered an order finding that, since the prosecution of the appeal, the issues involved had become moot, and dismissing the appeal from the interim order and remanding the cause with direction to discharge the receiver. The remittitur was transmitted to the trial court on December 17, 1960.

On February 10, 1961, the trial court (Judge Turner) entered the findings of fact, conclusions of law, and judgment, from which the present appeal has been prosecuted. The court awarded respondents a judgment against the union only (and not its officers) in the sum of $8,845.98 for attorneys' fees and costs for services and expenses to and including December 31, 1960, plus $206.50 for services and expenses to date of judgment.

This judgment also discharged the receiver previously appointed for the union and denied appellants' motion for dismissal of the cause for want of prosecution.

The final paragraph of the judgment provided:

"Be It Further Ordered, Adjudged and Decreed that this. Judgment be deemed a final Judgment and termination of this cause subject only to and without prejudice to any further claim by Plaintiffs for attorneys' fees and costs if and in the event this action be appealed to the Supreme Court of the State of Washington by the Defendants or any of them."

Appellants (Teamsters' Union No. 174 and two of its officers) rely for reversal on 12 assignments of error, but the primary contention is that, since the case was dismissed by this court as moot, there has never been a legal determination that respondents would have been successful in maintaining their action so as to become entitled to costs and attorneys' fees.

Appellants contend that respondents are not entitled to costs and attorneys' fees unless they can show that they

would, or should have "won" if the litigation had not been terminated because of mootness.

Several other issues have been raised by appellants, all of which pertain to the merits of the case. For instance, it is contended that the main action was for an accounting, and that that action was not disposed of by this court at the time the earlier appeal was dismissed as moot. Appellant further contends that the main action should have been dismissed for lack of prosecution, under Rule of Pleading, Practice and Procedure 41.04W (RCW Vol. 0). The trial court correctly stated in its memorandum opinion that it had decided, in December, 1957, all issues then presented by the pleadings. The above contentions have no bearing on the award made by the trial court in this case. They will, therefore, be disregarded.

The only significant issue, as we see it, is the ultimate issue in this case. Did the trial court commit reversible error in awarding $9,052.48 in costs and attorneys' fees to respondents (the plaintiffs in this action) when neither party prevailed because the case was dismissed as moot?

Appellants accept the well-established equitable principle that a court may, in its discretion, allow counsel fees to a complainant who has maintained a successful suit for the preservation, protection, or increase of a common fund. The rationale of the rule is that the complainant has brought "benefit" to the fund. *Peoples Nat. Bank of Washington v. Jarvis*, 58 Wn. (2d) 627, 364 P. (2d) 436 (1961); *Monroe v. Winn*, 19 Wn. (2d) 462, 142 P. (2d) 1022 (1943); *Hein v. Forney*, 164 Wash. 309, 2 P. (2d) 741, 78 A. L. R. 631 (1931).

Appellants contend, however, that the principle is not applicable to this case because it was not brought by respondents to preserve, defend, or create a common fund, and no such result was attained.

The doctrine, to our knowledge, has never been considered with regard to labor unions in Washington, but the general principle, and the reasoning which supports it, is applicable in such a case. California courts have applied the doctrine to cases involving labor unions. See *Weber v.*

*Marine Cooks' & Stewards' Ass'n*, 93 Cal. App. (2d) 327, 208 P. (2d) 1009 (1949), quoted with approval in *De Monbrun v. Sheet Metal Workers*, 140 Cal. App. (2d) 546, 295 P. (2d) 881 (1956), as follows:

" . . . 'When a common fund is maintained for the benefit of a number of persons bound together by association and a contract exists between the association and its members directing the course of action in changing the personal and property rights of the members, and an effort is made to break the contract and substitute another which impairs and injures the rights of the beneficiaries, then the successful maintenance by a few for the benefit of many of an equitable action resulting in the protection of the contractual rights as originally established is ground for allowing attorney's fees to those who battle to redress the wrong and maintain the previous personal rights although no actual court order to return the erroneously spent funds has been made.' . . . "

We hold that the doctrine regarding benefit to a common fund applies to the funds of labor unions.

■ The party whose participation in the litigation brings benefit to the common fund is entitled to an award of reasonable attorneys' fees regardless of his success in litigation. See *Puget Sound Nat. Bank v. Easterday*, 56 Wn. (2d) 937, 350 P. (2d) 444 (1960); and *Baker v. Seattle-Tacoma Power Co.*, 61 Wash. 578, 112 Pac. 647 (1911).

The trial court found that the common fund had been benefited as a result of the bringing of this action by respondents. In findings of fact Nos. 6 and 7, to which error has been assigned, the trial court found:

"VI. This action was brought by plaintiffs for the preservation and protection of common funds and property of the members of LOCAL 174, an unincorporated association. As a direct and proximate result of said suit the defendant LOCAL 174 has remedied and corrected its methods of bookkeeping and accounting and handling of funds in many ways, including the following:

"(a) Invoices in support of all disbursements have been retained by said defendant LOCAL 174 since January 1, 1957 and are properly canceled, filed and recorded;

"(b) Receipts are recorded for each business day and

deposited to show each day's receipts, thus permitting bank statement reconciliations and the balancing with the general ledger;

"(c) The purpose of all of the LOCAL's disbursements is shown by the records now maintained;

"(d) Proper bookkeeping support is maintained;

"(e) Records are now kept from which an audit can be made;

"(f) Receipts are deposited daily, with a separate deposit for each day's receipts;

"(g) Expense reports for officers and employees are now maintained by defendant LOCAL 174 and have been since 1957;

"(h) Defendant LOCAL 174 keeps a complete list of assets and has instituted and maintained a property and equipment register;

"(i) The records of the LOCAL 174 are now balanced daily, monthly and yearly;

"(j) The defendant LOCAL 174 now maintains a cash book and disbursement book, keeps a daily record of receipts, provides financial statements and balance sheets, and keeps books in support of expenditures.

"VII. Also as a direct and proximate result of the institution of this action defendant LOCAL 174 has called and held a lawful election in accordance with its By-Laws and Constitution, and has elected officers who hold office properly and in accordance with the requirements of law and of the Constitutions of the INTERNATIONAL BROTHERHOOD OF TEAMSTERS and of the defendant LOCAL."

Unless these findings are not supported by substantial evidence, they must be accepted as verities. So regarded, the findings amply support an award of attorneys' fees.

The burden is on the party attacking a finding of fact to show that it is not supported by substantial evidence. The very fact that these reforms were made after the initiation of legal action, leads to the reasonable inference that such reforms were caused by the initiation of such legal action.

The only contention in appellants' brief which can be construed as an attack on findings of fact Nos. 6 and 7 *as factual findings* is a suggestion that the reforms might have been a result of the impact which the McClellan committee

hearings had on labor unions. Such a suggestion is hardly a ground for overturning a finding of fact.

Since findings of fact Nos. 6 and 7 are supported by substantial evidence, they must be accepted as the established facts of the case. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959). Therefore, the initiation of legal action brought benefit to the common fund, which justifies an award of attorneys' fees. This common fund belongs to all of the approximately 5,600 members of the union.

What we have just said also applies to findings of fact Nos. 7 and 8, which are also challenged in appellants' assignments of error.

While appellants assign error to the entry of judgment by the trial court, they have not objected to the *amount* of attorneys' fees and costs awarded, nor have they submitted any argument in support of that assignment of error. We need not discuss that assignment.

■ Appellants also claim that the trial court's judgment is erroneous because it leaves respondents free to claim additional attorneys' fees and costs in the event of an appeal to this court. We find no merit in this assignment. *Monroe v. Winn, supra.*

Since the amount awarded by the trial court did not include fees for services in this court, we are of the opinion that respondents are entitled to a reasonable sum for attorneys' fees on this appeal. The trial court should determine the value of these legal services as herein directed. Respondents will recover their costs in this court.

The judgment of the trial court is affirmed with directions to determine the amount which should be awarded respondents for attorneys' fees for legal services rendered in connection with this appeal. The trial court may, in its discretion, take such additional testimony as it deems proper for the sole purpose of determining the amount of such additional award. Judgment shall be entered for this amount in addition to the sum of $9,052.48 (being the

509

amount of the judgment heretofore rendered in favor of respondents against the union).

OTT, C. J., HILL, WEAVER, ROSELLINI, HUNTER, and HAMILTON, JJ., concur.