[Nos. 42570, 42571.   En Banc.   June 20, 1974.]

STUART WEISS et al., *Petitioners,* v. LOUIS J. BRUNO, *as Superintendent of Public Instruction, et al., Respondents.*

*Montgomery, Purdue, Blankinship & Austin* and *John D. Blankinship* and *Jerry W. Spoonemore,* for petitioners.

*Slade Gorton, Attorney General, Malachy Murphy, Deputy, Richard M. Montecucco, Senior Assistant,* and *William A. Coats, Assistant,* for respondents.

BRACHTENBACH, J.—In *Weiss v. Bruno,* 82 Wn.2d 199, 509 P.2d 973 (1973), we granted writs of prohibition against the disbursement of state funds as authorized by two legis-

lative acts. The challenged acts, which involved state financial aid to certain categories of students, were found to be unconstitutional. The petitioners herein were the successful petitioners in those consolidated cases.

The petitioners thereafter filed a cost bill which claimed reasonable attorneys' fees as well as a return of the deposit of $26 in each case made pursuant to Rules on Appeal I-58(c). After respondents excepted to these two items, the Supreme Court Clerk ruled that only statutory attorneys' fees in each case were allowable and that the deposits were not taxable as costs. Petitioners made timely exceptions to the clerk's ruling and moved for an allowance of reasonable attorneys' fees.

■ Dealing with the deposits first, ROA I-58 requires a deposit of $26 when filing certain original proceedings in the Supreme Court. The rule directs that the deposit shall be returned if the petitioner prevails. Since petitioners prevailed they are entitled to a return of those deposits, but they are not taxable as costs under ROA I-55.

It is the general rule in the United States as well as in Washington that attorneys' fees are not ordinarily recoverable except pursuant to statute or under a contractual obligation. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 111 P.2d 612 (1941); 20 Am. Jur. 2d *Costs* § 72, at 58 (1965).

■ However, it has long been the rule that equity may allow reimbursement of attorneys' fees from a fund created or preserved by a litigant for the benefit of others as well as himself. This "common fund" doctrine has its roots in English law. *Trustees v. Greenough,* 105 U.S. 527, 26 L. Ed. 1157 (1881); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 83 L. Ed. 1184, 59 S. Ct. 777 (1939). Charges of this nature against public funds have also been allowed. *Shillito v. Spartanburg,* 214 S.C. 11, 51 S.E.2d 95, 5 A.L.R. 863 (1948); and *see Allowance of counsel fees in taxpayer's action,* Annot., 5 A.L.R.2d 874 (1949).

The principle has been broadened so that it is not limited to the creation or preservation of monetary funds, but ex-

tends to situations where a litigant confers some other substantial benefit on an ascertainable class, such as preserving the rights of corporate shareholders. *Mills v. Electric Auto-Lite*, 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616 (1970).

The federal courts have further enlarged the scope of recoverable attorneys' fees by adopting the "private attorney general" theory. The district court in *La Raza Unida v. Volpe*, 57 F.R.D. 94, 98 (N.D. Cal. 1972), explained it thusly:

> The role briefly stated is that whenever there is nothing in a statutory scheme which might be interpreted as precluding it, a "private attorney-general" should be awarded attorneys' fees when he has effectuated a strong Congressional policy which has benefited a large class of people, and where further the necessity and financial burden of private enforcement are such as to make the award essential.

(Footnote omitted.)

In Washington, the "common fund" theory was applied as early as *Baker v. Seattle-Tacoma Power Co.*, 61 Wash. 578, 112 P. 647 (1911). More recently the theory was applied to a labor union dispute even though no direct monetary benefit was realized. *Grein v. Cavano*, 61 Wn.2d 498, 379 P.2d 209 (1963).

We find the underlying philosophy of the common fund doctrine, and particularly that portion dealing with the preservation of a fund, to be appropriate for the facts before us.[1]

Respondents argue that there is no identifiable existing fund under the control of the court. As the above discussion indicates, that is not a literal requirement. Even if it were, it has been held that if a fund is the subject of the litigation, it need not be within the registry of the court. *Cintas v. American Car & Foundry Co.*, 133 N.J. Eq. 301, 32 A.2d

[1] In light of our result herein, we deem it unnecessary to adopt the private attorney general theory in this case. We express no view as to its applicability in other cases.

90 (1943), *modified on other grounds,* 135 N.J. Eq. 305, 37 A.2d 205, 38 A.2d 193 (1944).

Since the right to award attorneys' fees in limited, special situations springs from our inherent equitable powers, we are at liberty to set the boundaries of the exercise of that power.

From the record it is clear that none of the officials or agencies involved had challenged or were going to challenge the constitutionality of the legislative acts under which the disbursements were to be made, notwithstanding petitioners' requests to do so.

By these lawsuits the petitioners have halted the unlawful disbursement of approximately $1 million of taxpayers' funds. Their efforts also prevented the expenditure of $2.55 million which was appropriated by the 1973 legislature before our decision in the main case was filed.

Finally, the challenged statutes and administrative plans clearly violated the constitutional principle of separation of church and state. The actions of the petitioners, therefore, not only benefited all *taxpayers* by halting the disbursement of public funds under an unconstitutional statute, but also protected the constitutional right of all *citizens* to the separation of church and state.

Thus we are presented with: (1) a successful suit brought by petitioners (2) challenging the expenditure of public funds (3) made pursuant to patently unconstitutional legislative and administrative actions (4) following a refusal by the appropriate official and agency to maintain such a challenge.

Under these narrow and very limited circumstances we believe that the common fund principle should allow petitioners to recover reasonable attorneys' fees.

Based upon the affidavits and counteraffidavits submitted, we find that a reasonable attorneys' fee to be allowed and taxed against respondents is the sum of $15,676. This fee is not taxable as costs under ROA I-58 but is awarded against respondents pursuant to petitioners' motion for its allowance. It is so ordered.

Finley, Rosellini, Hunter, Hamilton, Stafford, Wright, and Utter, JJ., concur.

Hale, C.J. (dissenting)—There appearing to me no basis in law or equity for the taxing of attorneys' fees against the state, and no appropriation with which to pay them, and no sanction whatever either in the rules or statutes for the method adopted by the court in this case to determine the amount allowed, I dissent.

Petitioners, as citizens and taxpayers, earlier brought a writ of prohibition to prevent the disbursement of public money appropriated by the legislature and approved by the Governor to apply toward the tuition of needy children attending private and parochial schools and for students attending private colleges. *Weiss v. Bruno*, 82 Wn.2d 199, 509 P.2d 973 (1973). The challenged statutes allowed up to $100 per year for elementary school children; not over $300 per year for secondary school students (grades 9-12), and not to exceed $100 for each college student. Petitioners prevailed in that suit and this court, declaring these appropriations to be unconstitutional, prohibited the expenditures of the appropriated moneys for the reasons that public funds could not be spent to support nonpublic schools (Const. art. 9, § 4); and that the public's schools must be kept forever free from sectarian control or influence. *Weiss v. Bruno, supra.* Although petitioners won their point in barring the expenditure of moneys which had been appropriated by the legislature and approved by the Governor, it now appears they are entitled to moneys never appropriated by the legislature nor approved by the Governor.

The court's opinion, as I see it, runs directly against the statutory and judicial law of this state and violates the long-standing but modern principle that attorneys' fees shall never be assessed against the loser party nor awarded to the winner unless explicitly authorized by statute or contract—a principle running back in American law at least as far back as *Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 1 L. Ed. 613 (1796). That attorneys' fees in the absence

of statute or contract shall not be awarded has been restated in this jurisdiction many times including *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 111 P.2d 612 (1941) and *State ex rel. Lemon v. Coffin*, 52 Wn.2d 894, 895, 327 P.2d 741 (1958), explicitly holding that "The right to costs is purely statutory." If the right to costs is purely statutory, and there is no statute authorizing the awarding of attorneys' fees as costs, the court is without jurisdiction to either enact or invent one.

This court directly asserted the very principle which it now repudiates when it denied the award of attorneys' fees in the consolidated case of *Fritz v. Gorton*, 83 Wn.2d 275, 315, 517 P.2d 911 (1974), where we said:

> It is well established that attorney fees will not be granted unless they are specifically authorized by statute, and funds are appropriated and available. *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 385 P.2d 45. 1 A.L.R. 3d 876 (1963); *Schoenwald v. Diamond K Packing Co.*, 192 Wash. 409, 73 P.2d 748 (1937). Neither our research nor that of claimants has produced convincing authority to support granting of attorney fees requested in these companion cases. We have no alternative but to deny the claims for awards of attorney fees.

Unless there exists a contract or statute which provides for the taxing of attorneys' fees as costs, attorneys' fees are not to be included among the recoverable costs to the prevailing party. 22 Am. Jur. 2d *Damages* § 165 (1965); *State ex rel. Macri v. Bremerton, supra*. We adhered to this rule in denying attorneys' fees as costs in *Fiorito v. Goerig*, 27 Wn.2d 615, 619, 179 P.2d 316 (1947), as follows:

> The term "costs" is synonymous with the term "expense." . . . [I]n other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

In all actions prosecuted in the name and for the use of the state or any county, or against them, the state and county shall be liable for costs to the same extent *as private parties*. RCW 4.84.170. Taxable costs to private parties

in the appellate courts include clerks' fees in the superior and appellate courts; costs of statements of fact and transcripts; attorneys' fees *in the amount of twenty-five dollars;* and actual costs of briefs and bond premiums. RCW 4.88.260.

And this court has, by rule, limited the recovery of attorneys' fees to those prescribed by statute. ROA I-55(a)(2) expressly states, *inter alia,* that "The costs which may be recovered are: . . . statutory attorney's fees." It is thus clearly established that there exists no way in which the court can authorize the expenditure of unappropriated, unauthorized public funds for the payment of these attorneys' fees—and it has been, I think, hard put to invent one.

Attorneys' fees are awarded here, however, on the novel judicial invention of what is described as the common fund theory—a hypothesis now elevated to a doctrine of law and imposing upon the state a debt which it has not consented to incur. Aside from the fact that the so-called common fund—in which the litigants will be allowed to share—does not now exist in this case and never has existed in this state, I can find no powers in a court of equity to award what the law otherwise forbids.

There is no common fund here established for the benefit of petitioners. The fund in which petitioners claim a stake by virtue of their successful prosecution of a suit to have the appropriation for private school tuition declared invalid (*See Weiss v. Bruno, supra*)—this so-called "common fund" created by the legislature and Governor and held unconstitutional—was a fund to provide partial tuition for children attending private elementary schools. In no sense was it established by the legislature for the benefit of parties not only claiming no share in it but actually aspiring to block its disbursement. Unless it can be said that all appropriations create a common fund from which any person successfully challenging disbursement of that fund may draw attorneys' fees, we do not have such a fund here. The fund here, collected from all of the taxpayers through general taxation, was appropriated ostensibly for the public

purpose of supporting education but operated largely to support private schools. Not one penny of it, according to the legislation establishing the fund, was appropriated to provide attorneys' fees for those who not only did not claim the benefits of it but who could successfully prevent its disbursement. There thus exists no common fund in which the plaintiffs may share, even to the extent of attorneys' fees.

The court relies upon two cases of this court, neither of which, I think, to be authority for the proposition that whoever defeats an appropriation of public funds and obtains a judgment barring their expenditure may recover from the public treasury reasonable attorneys' fees. Thus, *Baker v. Seattle-Tacoma Power Co.*, 61 Wash. 578, 112 P. 647 (1911), an action brought by a stockholder in a private business corporation to recover a profit realized by officers and other shareholders in dealings among themselves and the corporation, seems to have no precedential value whatever to the instant holding; and *Grein v. Cavano*, 61 Wn.2d 498, 379 P.2d 209 (1963), in which counsel fees were allowed to a complainant who had successfully maintained an action to protect, preserve and increase the funds of a labor union treasury, also seems to me to be remote and inapplicable. *Shillito v. Spartanburg*, 214 S.C. 11, 51 S.E.2d 95, 5 A.L.R. 863 (1948), I think is directly contra to the law of Washington and repugnant to this state's constitution forbidding the expenditure of public funds not expressly appropriated. Similarly, in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616 (1970), the recovery both of damages and attorneys' fees by stockholders was allowed because of the corporation's violation of the Securities Exchange Act of 1934, § 14(a), 48 Stat. 895, as amended; 15 U.S.C. § 78n(a), and the consummation of an illegal merger. There, of course, we have a private business corporation whose treasury had no connection whatever with the public treasury. *See,* however, Justice Black's dissent for the allowance of such fees, at page 397.

Indeed, there seems to be little sound authority for the view the court now takes. In *Marion County v. Rives & McChord* 133 Ky. 477, 118 S.W. 309 (1909), where the plaintiff on behalf of himself and others brought suit to prevent the illegal expenditures of county funds, it was explicitly held that he could not expect his attorneys to be paid by the county. The sums expended by him were deemed simply a contribution to good government and the attorney who undertook the representation could look only to the plaintiff taxpayer who employed him. In *Southern v. Beeler,* 183 Tenn. 272, 302, 195 S.W.2d 857 (1946), a taxpayer brought action against the Board of Knox County and the Attorney General of Tennessee to enjoin the unlawful appropriations of county funds to be spent for school buildings, property, and maintenance. His suit was successful, and the court entered a decree barring the expenditure, whereupon plaintiff made demand for reasonable attorneys' fees. Rejecting this claim, the court said:

> The claim of counsel in the instant case for a reasonable fee against the defendant is most meritorious, but we have searched the books in vain for a rule of law which purports to authorize the rendition of a decree awarding attorneys' fees for services in protecting the public treasury from being raided by illegal appropriations. The conclusions we have reached represent not so much the will of the Court as the will of the law. Since there is no fund or property here, either impounded or protected by any order of court, upon which a lien can be declared, and no contract to be enforced, it results that the decree of the chancellor must be held erroneous.

*Accord, Eckford v. Atlanta,* 173 Ga. 650, 160 S.E. 773 (1931).

The legislature of this state has never supplied the courts with funds for the payment of attorneys' fees in civil cases generally nor in actions brought against the state. There is no fund in existence—aside from indigent criminal case appeals—over which the court has custody or control and from which an attorney's fee award can be made. This brings the case within the rationale of *Von Holt v. Izumo*

*Taisha KYO Mission,* 44 Hawaii 147, 355 P.2d 40, *aff'd on rehearing,* 44 Hawaii 365, 355 P.2d 40, 44 (1960), in which the award of attorneys' fees was denied. Holding that no award could be allowed without an appropriation for it putting the funds under the control of the court—as they now are in indigent criminal appeals in this state—that court said, at page 150:

> Moreover, the mere existence of a fund is insufficient to authorize a court to make an allowance of counsel fees from it, in favor of a taxpayer. The court must have at least constructive custody or control of the fund.

And to make it clear that it is the legislature and not the courts which controls the expenditure of public money, the court stated on rehearing, at page 368:

> We say constrained advisedly, because we are mindful not only of the public service rendered by the taxpayer in this action but of the constitutional restraint on our powers. The legislative branch of government alone holds the purse strings to the public treasury. We can only quote with approval the general thought behind the holding in *Grandle* v. *Rhodes,* 107 Ohio App. 558, 154 N.E.2d 172, at p. 173, as follows:
> "* * * If it were in the power of the court to order the payment of reasonable attorneys' fees, it would seem eminently right and proper to do so. Many a soldier goes forth to war with no assurance that his family will be protected by the government he is helping to protect and preserve. He does his duty in the faith that a grateful government will do what is right by those whom he may leave behind. * * * Courts ordinarily do not like to put counsel in the position of having to appeal, with hat in hand, to the sound discretion of some board for the allowance of attorneys' fees which they have justly earned. But the law in this case seems to us definite—that there are no funds available out of which a proper order for payment can now be paid."

The court's decision in this case will, I fear, put a premium upon litigation to block the expenditure of publicly appropriated funds. It will have the effect of making every

successful claimant who can, by court action, invalidate the expenditures of appropriated money into a kind of private attorney general, thus creating a species of public officer neither established nor created by the constitution, the legislature or the people. The office of attorney general is one created by the constitution (Const. art. 3, § 21), and implemented by statutes prescribing his powers and duties. RCW 43.10.030. That officer and his assistants are charged by law with the responsibility of representing the state, and there is no such thing in this state as a private attorney general.

This state has already rejected the private attorney general theory in *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 86, 510 P.2d 1140 (1973), where, because of charged violations of the State Environmental Policy Act of 1971 (RCW 43.21C) private individuals successfully maintained their suit to halt the grading, filling and excavating activity in construction of an industrial park, they refused to recognize the "private attorney general" idea and denied an award of reasonable attorneys' fees.

Unless the legislature sees fit to do so and appropriates the money to accomplish it, I think that the judiciary, like the proverbial shoemaker, should stick to its last. It ought not create a financial incentive—as this opinion will assuredly do—to challenge the appropriations for the schools, public assistance, the courts, penal institutions, highways, and all the other functions of state government by a ruling that these appropriations create a common fund to be shared to the extent of attorney fees incurred by any person who succeeds in having them declared invalid in the courts.

I would, therefore, adhere to the clerk's ruling on costs and deny the award.