[No. 22560-3-II.    Division Two.    July 23, 1999.]

RUSTLEWOOD ASSOCIATION, ET AL., *Respondents*, v. MASON COUNTY, *Appellant*.

*Gary P. Burleson, Prosecuting Attorney,* and *Michael Edward Clift, Deputy,* for appellant.

*Stephen Talcott Whitehouse,* for respondents.

HUNT, J. — Mason County appeals a summary judgment that declared illegal its Resolution 50-95. Resolution 50-95 imposed a fee upon Rustlewood residents to recoup the County's past expenditures for Rustlewood's sewer and water system that exceeded the fees collected from Rustlewood residents. These expenditures were made from a combined fund into which residents of Hartstene Pointe and Beard's Cove, separate residential developments, had

paid the same monthly fees as Rustlewood residents over a period of some twelve years. The trial court ruled that the Rustlewood residents' past payment of their Mason County utility bills constituted an account stated, barring the County's recovery of such funds. Holding that neither the doctrine of account stated nor the accountancy act is applicable but that the County's attempted recoupment from Rustlewood is not required by RCW 36.94.140, we affirm.

## FACTS

Rustlewood is a planned unit development located in Mason County (the County). The Rustlewood Homeowners Association operated the sewer and water system that served Rustlewood until 1975, when Mason County assumed operation of the system. Hartstene Pointe and Beard's Cove are two other Mason County residential developments, whose sewer and water systems the County also operates. During the early years, the County maintained a separate fund for each of the three systems: Rustlewood residents paid into the Rustlewood fund; Hartstene Pointe residents paid into the Hartstene fund; and Beard's Cove residents paid into the Beard's Cove fund. Maintenance and operating costs for each system were paid separately from each fund as needed.

In 1980 Mason County adopted Resolution No. 1106, which created a single fund for operating and maintaining the three systems. All revenues from each of the three separate funds were transferred into the new combined fund, after each system's outstanding obligations were satisfied from that system's separate funds. The resolution required the County to maintain accounting for all receipts and expenditures and to keep separate subsidiary accounts for each of the three systems.

The County did not set the new rates based on each system's individual actual costs; nor did it apparently take into account such variables as the systems' relative ages, conditions, distances involved, and so forth. Rather, the

County set a uniform rate for all residential users of the three subdivisions' water/sewer systems. Accordingly, the County billed each resident of the three subdivisions the same amount per month for at least 12 years. This combined fund was apparently adequate to cover the various expenses of operating the three water/sewer systems. Although maintaining separate subsidiary accounts, the County did not segregate each system's expenses, allocate them to the residents of a single subdivision system, or deviate from its established uniform rate, regardless of whether one system required more expensive maintenance than another.

In 1992, Mason County discovered what it perceived to be an error. Since 1984, the County had spent more money maintaining and operating the Rustlewood and Beard's Cove systems than it had collected from Rustlewood and Beard's Cove residents, and less money on the Hartstene Pointe system than it had collected from Harstene Pointe residents. To remedy what it perceived to be an illegal inequity under state law,[1] the County enacted Mason County Resolution No. 50-95 (the Resolution).

The Resolution proclaimed that Rustlewood residents were beneficiaries of $113,557 paid into the fund by Hartstene Pointe residents. Believing that these fees could be used to benefit only the fee payers, the County concluded that Rustlewood owed Hartstene Pointe the overage. To repay the overage, the County imposed upon Rustlewood residents an additional monthly fee of $11.33 for a five-year period.[2]

Rustlewood residents brought suit to enjoin Mason County from enforcing the Resolution and to declare it in-

---

[1] RCW 43.09.210 requires local governments to maintain separate accounts "for each department, public improvement, undertaking, institution, and public service industry under the jurisdiction of every taxing body." The statute further requires that services rendered by each such entity "be paid for at its true and full value" by that entity and that no one entity may benefit financially by appropriating from another entity's fund.

[2] Beard's Cove residents repaid the common fund $35,000, its share of the overage; that claim is not a part of this action.

valid. They alleged that the County's actions violated state law and 42 U.S.C. § 1983. Rustlewood moved for partial summary judgment on several grounds: (1) The fee was an illegal rate, in violation of RCW 36.94.140 and the Washington State Constitution. (2) The fee was to collect for past due amounts and, as such, was barred by the contract doctrine of account stated based on *Sunnyside Valley Irrigation District v. Roza Irrigation District*, 124 Wn.2d 312, 877 P.2d 1283 (1994). (3) Equitable estoppel barred the County from "assessing higher amounts to recover alleged past due amounts." (4) The statute of limitations barred collection of such past due money. (5) The fee constituted an illegal ex post facto law.

Mason County also moved for summary judgment, arguing: (1) the Resolution did not set a sewer/water system rate because it expressly assessed the recoupment fee in addition to the existing monthly rate; (2) the County had authority to enact the Resolution based on its statutory power to manage utility districts and was required to do so by RCW 43.09.210, the accountancy act; (3) even if the Resolution set a retroactive rate, the doctrine of account stated did not apply to this non-contract action, and the statute of limitation applies only to court actions, not to County actions to assess fees.

On November 8, 1996, the trial court granted partial summary judgment to Rustlewood. The court ruled that: the law governing an account stated, particularly *Sunnyside*, precludes the County from making claims relating to sewer and water bills paid long ago, as was done by Mason County Resolution 50-95; and, therefore, the court need not consider Rustlewood's other legal arguments. The court declared the Resolution illegal and enjoined the County from enforcing it or from assessing Rustlewood for the charges reflected in the Resolution.

On March 24, 1997, Rustlewood amended its complaint, seeking attorney fees under a common fund theory and under 42 U.S.C. §§ 1983 and 1988. Rustlewood then moved for attorney fees and costs. The court denied Rustlewood's

motion, stating there was no common fund preserved nor were public funds protected by Rustlewood's action. Regarding the §§ 1983 and 1988 claims, the court "did not determine that there was a violation of federal law that would allow the award of attorney's fees." Mason County appeals the summary judgment order; Rustlewood appeals the denial of attorney fees.

## ANALYSIS

Both parties agree that there are no material issues of fact and this matter is proper for summary judgment. As such, we look to the facts presented in the record and conclude that the County managed Rustlewood's and Hartstene Pointe's sewer and water systems as one public entity.

We are persuaded by Rustlewood's argument that because the County managed the finances of the three subdivisions' water/sewer systems through a common fund, its Resolution 50-95, assessing an additional fee against Rustlewood residents, constituted an illegal departure from the uniform rate previously established for the residents of all three subdivisions, contrary to RCW 39.94.140. Because we hold that the County established a single fund in 1980, we reject the County's argument that the accountancy act applies. Although we disagree with the trial court's ruling that the contract doctrine of account stated is applicable, we agree with the trial court's result and therefore affirm on the alternate ground raised by Rustlewood. *See Gross v. City of Lynnwood*, 90 Wn.2d 395, 401, 583 P.2d 1197, 96 A.L.R.3D 187 (1978). We address these three issues in order.

### I. Uniform Rates

■ Although the County set the rates for Rustlewood, Beard's Cove, and Hartstene Pointe by separate resolutions, the rates set were the same for all three subdivisions' water/sewer systems. These uniform rates do not appear to have been based on individual system factors such

as age, condition, past repair history, length and accessibility of pipes, and so forth.

Under RCW 36.94.140, the County classifies customers based on statutory criteria; the rates must be the same for the same class of customers.[3] The County can charge different rates only to different classes of customers. RCW 36.94.140; *Washington Manufactured Hous. Ass'n v. Public Util. Dist. No. 3*, 124 Wn.2d 381, 385, 878 P.2d 1213 (1994); *Hillis Homes, Inc. v. Public Util. Dist. No. 1*, 105 Wn.2d 288, 301, 714 P.2d 1163 (1986). Here, the County placed the residents of Rustlewood and Hartstene Pointe in the same class and charged them the same rate. Under RCW 36.94.140, the County cannot charge the Rustlewood residents what is in essence a higher rate than it charges the Hartstene Pointe residents while they are in the same rate class.[4]

## II. ACCOUNTANCY ACT

The County argues that the accountancy act, RCW

[3]RCW 36.94.140 provides that a county may classify customers based on the following factors:

(1) The difference in cost of service to the various customers within or without the area;

(2) The difference in cost of maintenance, operation, repair and replacement of the various parts of the systems;

(3) The different character of the service and facilities furnished various customers;

(4) The quantity and quality of the sewage and/or water delivered and the time of its delivery;

(5) Capital contributions made to the system or systems, including, but not limited to, assessments;

(6) The cost of acquiring the system or portions of the system in making system improvements necessary for the public health and safety;

(7) The nonprofit public benefit status, as defined in RCW 24.03.490, of the land user; and

(8) Any other matters which present a reasonable difference as a ground for distinction.

[4]The statute does not prevent the County, however, from establishing *different classes* for each of the three subdivisions and different rates based on the statutory factors.

43.09.210, prohibits one governmental fund from benefiting at the expense of another. The County has acted in good faith to attempt compliance with RCW 43.09.210. But we hold that the accountancy act does not *compel* the County to impose an additional fee on Rustlewood residents to repay the Hartstene Pointe subsidiary account for monies spent by the combined fund on Rustlewood sewer and water services.

The accountancy act governs accounting practices for governmental taxing bodies. It provides in pertinent part:

> Separate accounts shall be kept for each department, public improvement, undertaking, institution, and public service industry under the jurisdiction of every taxing body.

> All service rendered by, or property transferred from, one department, public improvement, undertaking, institution, or public service industry to another, shall be paid for at its true and full value by the department, public improvement, undertaking, institution, or public service industry receiving the same, and no department, public improvement, undertaking, institution, or public service industry shall benefit in any financial manner whatever by an appropriation or fund made for the support of another.

RCW 43.09.210. The case before us does not involve a service rendered by one public improvement to another without charge, but rather, it involves the expenditure of combined funds to benefit some, though not all, of one class of ratepayors.

While the County could have kept separate and continued to treat each sewer system as unique public service industries, the County did not do so. Instead, in 1980, the County enacted Resolution 1106:

> WHEREAS, in the interest of economy of time and money; and,

> WHEREAS, there are now three (3) water and/or sewer funds and the possibility of more in the future; and,

> WHEREAS, the Mason County Department of Public Works

has the capability and responsibility to administer these funds in accordance with directives from the State Auditor's Office.

   NOW THEREFORE BE IT RESOLVED that the Mason County Treasurer is hereby directed to *create a fund* to be called the "Combined Sewer and Water Fund" and to transfer all monies in the Beards Cove Water Fund, Rustlewood Sewer and Water Fund and the Hartstene Sewer and Water Fund to the Combined Sewer and Water Fund *after all outstanding warrants have been paid from the three funds;* and,

   BE IT FURTHER RESOLVED that the Mason County Department of Public Works is charged with the accounting of all receipts and expenditures and to keep subsidiary accounts for each and every sewer and water function as now exists or may be added in the future, all in accordance with directives of the State Auditor; and,

   BE IT FURTHER RESOLVED that this resolution will become effective on January 1, 1980 for the 1980 budgets.

Mason County Resolution 1106 (emphasis added). Since 1980, the County has operated the three subsidiary accounts as a combined fund managed by one department, the Department of Public Works. Merely because over time the County expended more money on Rustlewood's sewer and water system than it did on Hartstene Pointe's system does not require a repayment from the Rustlewood account. Rather, these subsidiary accounts are a single combined fund operated by a single department; they constitute one public service industry for the purposes of the accountancy act.[5]

   The Attorney General has interpreted RCW 43.09.210 as it pertains to charges among municipal public service utilities, opining that the particular circumstances of each case should be examined, but that *interdepartmental* transfers

---

   [5]Thus, it does not matter that one portion of the system was more costly to maintain; the salient factor is that each class of ratepayors must be assessed the same rate. In *Morse v. Wise*, 37 Wn.2d 806, 226 P.2d 214 (1951), plaintiffs challenged a rate that encompassed improvements to the sewer system benefiting only new ratepayors; but the court held that such a rate was valid because the City was required to classify ratepayors and then to charge the same class the same rate.

would rarely be allowed. 1915-16 Op. Att'y Gen. 379-80. Here, the County did not make interdepartmental transfers of funds; rather, it used monies collected into a common sewer/utility fund to pay the various maintenance and operating expenses of the three subdivisions' systems as they arose.

That the County maintained separate subsidiary accounts for each of the three subdivisions does not make Rustlewood a separate entity for purposes of the accountancy act. The County acted in good faith in attempting to comply with this law by adopting increased fees for Rustlewood to compensate for services it perceived to have been illegally covered at the expense of Harstene Pointe.

We hold that, because since 1980 the County treated the sewer/water fees from the three subdivisions as part of the same fund: (1) the accountancy act does not apply; (2) the County did not act illegally in using the common fund for variable operating and maintenance expenses of the three subdivisions; (3) the County was therefore not required to adopt Resolution 50-95 to correct what it perceived to have been an error; and (4) the Resolution violates RCW 36.94-.140.[6]

### III. ACCOUNT STATED

■ The contract doctrine of "account stated" was the basis for the trial court's basic ruling that the County could not charge Rustlewood an additional prospective fee for water and sewer costs paid years earlier. This doctrine is a method for determining the amount of a debt, generally asserted as a defense in a contract action. *Northwest Motors, Ltd. v. James*, 118 Wn.2d 294, 304, 822 P.2d 280 (1992), citing *Goodwin v. Northwestern Mut. Life Ins. Co.*, 196 Wash. 391, 410, 83 P.2d 231 (1938). Typically, periodic residential utility debts do not constitute an account stated because single item liquidated debts for a sum certain do not often

---

[6]Our holding, however, does not prohibit the County from enacting a new, differentiated, prospective rate system, establishing separate classes for each of the three subdivisions with their own individualized rates if the County chooses to depart from its existing common fund/uniform rate approach.

qualify for this defense. 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS, § 1304 (1962).

Accounts stated generally concern open accounts, where the amount a party owes at a given moment is difficult, if not impossible, to fix precisely. CORBIN, § 1303. When a party in such a financial relationship presents an accounting and the other party assents to its correctness, the accounting is accepted as the debt owed; this agreement, explicit or implicit, constitutes an account stated.[7] CORBIN, § 1303. Mutual assent to the accounting is necessary. As explained by the Washington Supreme Court, "[I]t must be mutually agreed between the parties that the balance struck thereon is the correct amount due from the one party to the other on the final adjustment of their mutual dealings to which the account relates." *Shaw v. Lobe*, 58 Wash. 219, 221, 108 P. 450 (1910).

The facts of *Sunnyside*, cited by the trial court, demonstrate how the doctrine of account stated relates to contract

---

[7]Arthur Corbin further explains that:

Persons who carry on business with each other often have a series of transactions constituting an open running account with various items of debit and credit. For long periods neither one may know which one is actually indebted to the other. Under such circumstances, they may get together and compare their books and their memories, cast up their mutual accounts, and strike a balance. In Latin phrase, they were formerly said to have accounted together—insimul computassent. Assumpsit lay for the recovery of the balance so found due, before the development of many of the principles of present-day contract law.

. . . .

. . . Common illustrations of such accounts, with recurring debits and credits, are those between banker and depositor, between customer and grocer or department store, between principal and agent, and between partners in business. In all such cases, if the items are liquidated in money, one of the parties is a debtor to the other in an amount that can be determined at any time by an accounting process. The amount of the debt is the balance of debits over credits. The debt becomes due and payable only as the parties may have agreed; this may be in installments or as a whole, at regular intervals or as demanded by the presentation of drafts or statements of account.

CORBIN, § 1303 at 234-35.

actions.[8] A close look at the contract relationship in that case demonstrates how account stated was a valid defense against a counterclaim. The amount Roza was to pay Sunnyside was based on yearly estimates. Even though Sunnyside billed Roza for maintenance actually performed, such bills were part of an ongoing open account, the daily balance of which could be ascertained only by accounting procedures. Thus, when Roza assented to the accounting by paying the bills without protest, Roza in effect agreed to Sunnyside's accounting, and the doctrine of account stated barred Roza's contract claim to recover allegedly excessive costs. There was no evidence before the trial court that Roza had paid the bills under protest, and thus Roza had constructively assented to the accounting presented by Sunnyside. *Sunnyside*, 124 Wn.2d at 318.

We agree with the County that the doctrine of account stated does not apply here. The facts differ significantly from *Sunnyside*, upon which the trial court relied in reaching its conclusion. The transactions between Rustlewood residents and the County did not constitute an account stated. First, the billing and paying of monthly water and sewer bills is not analogous to an open account: There was no need for complex accounting procedures; the amount due is known by the parties at all times; and the rate was set by statutory procedure. RCW 36.94.140. Thus, for the twelve years before Resolution 50-95, the County did not present monthly accountings to Rustlewood residents for approval;[9] neither party disputed the fixed monthly amount; and there having been no dispute, there was no

[8]In contracts with the United States Bureau of Reclamation, Sunnyside was to perform irrigation construction and rehabilitation work, and Roza was to pay 60 percent of the construction costs. Once the work was completed, Roza was to pay Sunnyside 50 percent of the maintenance costs based on annual estimates. Roza paid the maintenance bills presented by Sunnyside for ten years. Then, after ten years, Roza complained of poor maintenance and excessive costs, and refused to pay Sunnyside. Sunnyside sued Roza in contract; Roza counterclaimed that it had paid excessive maintenance costs. *Sunnyside*, 124 Wn.2d at 313-14.

[9]In *Sunnyside*, the creditor presented a monthly bill to the debtor that was based on estimates and work performed, which varied monthly. *Sunnyside*, 124 Wn.2d 312. That transaction became an account stated because of the complexity

implied consent based on paying the bills and no mutual agreement to constitute an account stated.

Rather, the utility bills at issue here were simply re-affirmations of existing debts: the previous promise to pay the fixed rate on a monthly basis. The monthly amount was fixed by the rate commission; the contract debt occurred when the customer agreed to purchase the water/sewer service from the County. Thus, there was no need for the court to impute a new agreement to pay an existing debt. Such a reaffirmation confirms the underlying contract, but does not constitute an account stated. CORBIN, § 1304.

Moreover, the doctrine of account stated is usually asserted as a defense in contract actions; this action is not one in contract but rather is an action challenging the legality of the County's Resolution. The County did not sue Rustlewood to recover a contractual debt, but instead enacted a new fee, the legality of which Rustlewood contests and we have held to be illegal.

Although we hold that the trial court erred in applying the doctrine of account stated, we affirm its granting summary judgment to Rustlewood on alternate grounds, as set forth in section I above.

IV. ATTORNEY FEES

A. Fees in the Trial Court

Rustlewood claims on appeal that the trial court erred by denying its request for attorney fees under the "common fund theory," or in the alternative, under 42 U.S.C. § 1983.[10]

---

of the transaction and the acceptance by the debtor of the creditor's accounting monthly.

[10]Under 42 U.S.C. § 1983, a person who deprives an individual of "rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" But, section 1983 does not grant successful litigants attorney fees; those fees are granted by 42 U.S.C. § 1988 when a litigant is successful under section 1983. Rustlewood asserts in its summary judgment motion that the resolution violates the Washington State Constitution prohibition against ex post facto

We agree with the trial court that Rustlewood is not entitled to attorney fees under the common fund theory or 42 U.S.C. § 1983.

■ Washington follows the American rule: no "attorney fees as costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*, 131 Wn.2d 266, 274, 931 P.2d 156 (1997); *Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 514, 910 P.2d 462 (1996); *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941). The four equitable exceptions to the rule are: (1) the common fund theory, (2) actions by a third party subjecting an individual to litigation, (3) misconduct or bad faith by a party, and (4) the dissolution of temporary restraining orders or injunctions when wrongfully issued. *McCready*, 131 Wn.2d 266.

The common fund theory[11] exists in two permutations: (1) a common fund that benefits others; and (2) a common fund that protects constitutional rights.

### 1. No Fund to Benefit to Others

■ Rustlewood claims it is entitled to attorney fees under the common fund theory and cites *Covell* for the proposition that attorney fees are proper when a litigant obtains a refund of utility fees and substantially benefits an ascertainable class. *Covell v. Seattle*, 127 Wn.2d 874, 891-92, 905 P.2d 324 (1995). The *Covell* court allowed fees when the parties prevailed in a class action lawsuit that

---

laws. Rustlewood then claims in its response brief that it does not matter that it cited only the Washington Constitution because the analysis is the same under either the federal or state constitutions, and it did make a general constitutional claim. But there is no state analog to section 1983. Further, the trial court stated, "I did not determine that there was a violation of federal law that would allow the award of attorney's fees."

[11]The policy for the common fund theory is to encourage access to attorneys and the legal system by class action plaintiffs. *Covell v. City of Seattle*, 127 Wn.2d 874, 891-92, 905 P.2d 324 (1995). This common fund theory was first announced in 1961, when the court stated that "[i]n the cautious exercise of this discretion, the court must determine that the litigation is indispensable to the proper administration of the trust [and is for the benefit of the trust]". *Peoples Nat'l Bank v. Jarvis*, 58 Wn.2d 627, 632, 364 P.2d 436 (1961).

yielded a fund created for the benefit of the class.[12] But *Covell* was a class action case in which a fund was created, and the court specifically relied on the class action policy of encouraging access to the judicial system in class actions. *Covell*, 127 Wn.2d at 891-92. But our case is not a class action suit, and no fund was created; the facts are too dissimilar from *Covell*.

Furthermore, it is mere speculation as to whether the missing parties agree with the Rustlewood parties or with the County. Rustlewood presented no evidence on summary judgment that other subdivision residents would substantially benefit from the action. Rather, it claims that 75 percent of Rustlewood residents not joined in the suit benefit from the outcome, apparently by implication from the named plaintiffs' claims of a benefit.

Rustlewood's success neither creates a common fund nor preserves public funds. Nor does this action protect contractual rights. Rather, this action is actually more like the private attorney general exception, which is not followed in Washington. *McCready*, 131 Wn.2d at 277. The Rustlewood litigants are essentially resisting a legislative action that, in turn, benefits some class of citizens. Attorney fees are not available in such a circumstance.

## 2. Constitutional Rights

■ The second common fund permutation involves protection of constitutional rights and was adopted in *Weiss v. Bruno*, 83 Wn.2d 911, 523 P.2d 915 (1974). The *Weiss* common fund theory has four requirements:

(1) a successful suit brought by petitioners (2) challenging the expenditure of public funds (3) made pursuant to patently unconstitutional legislative and administrative actions (4) follow-

---

[12]This first permutation of the common fund theory was extended to labor union litigation in *Grein v. Cavano*, 61 Wn.2d 498, 505-06, 379 P.2d 209 (1963). The court allowed fees under the common fund theory because a few union members had protected the contractual rights of the many union members.

ing a refusal by the appropriate official and agency to maintain such a challenge.

*Weiss*, 83 Wn.2d at 914; *McCready*, 131 Wn.2d at 276.

Rustlewood's claim for attorney fees also fails under the *Weiss* common fund theory. Here, there is no challenge to the *expenditure* of public funds, merely a challenge to the nonuniform *collection* of public funds. Attorney fees are not available when the court rejects the federal claim as the trial court did here.[13] *McCready*, 131 Wn.2d at 278-79. Thus, Rustlewood is not entitled to attorney fees under 42 U.S.C. § 1983. We therefore affirm the trial court's denial of trial attorney fees to Rustlewood.

### B. Fees on Appeal

RAP 18.1(a) provides: "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party must request the fees or expenses as provided in this rule[.]" Rustlewood claims attorney fees on appeal based on the common fund theory and under 42 U.S.C. § 1983. But as explained above, neither theory supports a grant of fees to Rustlewood. We therefore decline to award fees on appeal.

### CONCLUSION

We affirm the trial court's invalidation of Mason County Resolution No. 50-95.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.

---

[13]The trial court noted in its letter opinion that it specifically rejected the federal claims.