The TOY NATIONAL BANK OF SIOUX CITY, a corporation, Appellee,

v.

Wanda McGARR, Appellant,

and

Herbert C. McGarr; First Federal Savings & Loan Association of Sioux City; State of Iowa; and the United States of America, Defendants.

No. 62794.

Supreme Court of Iowa.

Dec. 19, 1979.

Wilford M. Forker of Forker & Kanter, Sioux City, for appellant.

A. Frank Baron and Randy S. Hisey of Baron & Wenell, Sioux City, for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, ALLBEE and LARSON, JJ.

LARSON, Justice.

This is an appeal by defendant Wanda McGarr from a judgment of foreclosure of a mortgage on the family residence owned by her and her husband, Herbert McGarr. The defense raised in the trial court was that the security interest was subject to rescission by the borrower for failure of the bank to comply with the federal Truth-in-Lending Act. The trial court ruled that the federal act did not cover this security interest because it was entered into in conjunction with a business loan. We affirm.

The events leading up to this action commenced on March 19, 1974, when Herbert McGarr executed a note to Toy National in the amount of $3021. The money was used to purchase a pleasure boat.

The next transaction occurred on December 12, 1975, when Mr. McGarr executed a second note in the amount of $12,000. This money was deposited to the account of Continental Midwest, a business corporation wholly owned by Mr. McGarr. On May 10, 1976, the second note was refinanced in the same amount but at an increased interest rate. The McGarrs executed a second mortgage on their residence to secure the loan. This was Mrs. McGarr's first involvement with the bank loan and the first time there was a security interest in the home.

On September 29, 1976, the amount due on the business loan, including both unpaid balance and accrued interest, was $12,-035.26. The amount due on the boat loan was $1016.83. On that date these loans were consolidated into a note in the amount of $13,077.09, which included $25 in loan costs. This note was secured by a new second mortgage.

On February 7, 1977, Toy National accelerated the note. Mrs. McGarr's response was a February 14 notice of rescission of both the May 10 and September 29 transactions. Her position is that those transactions fell within the provisions of the Truth-in-Lending Act giving her the right to re-scind the transaction until the third day following the receipt of certain required disclosures. The bank concedes that no disclosures were sent as to the May 10 or September 29 loans. Since the disclosures were never received, the right of rescission, if available to the borrower initially, was still exercisable. *Sosa v. Fite,* 498 F.2d 114, 118 (5th Cir. 1974). If these transactions were subject to the Truth-in-Lending Act, Mrs. McGarr's rescission was effective and Toy National's security interest was rendered void. However, if the transactions were not subject to the Act, no right of rescission existed.

The intent of the Truth-in-Lending Act is to protect the unwary consumer from overreaching practices of unscrupulous creditors. The Act's purpose was stated as follows:

The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

15 U.S.C. § 1601. The evil addressed is only consumer loan transactions, *see* 15 U.S.C. § 1602(h) (where "the money, property, or services which are the subject of the transaction are primarily for personal, family, household or agricultural purposes"), and the Act specifically exempts "[c]redit transactions involving extensions of credit for business or commercial purposes" from its operation. 15 U.S.C. § 1603(1). However, Congress recognized that full disclosure would not always be sufficient protection for the consumer. Thus, it provided an additional protection.

[I]n the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or

the delivery of the disclosures required under this section and all disclosures required under this part, whichever is later . . . . The creditor shall clearly and conspicuously disclose . . . to any obligor in a transaction subject to this section the rights of the obligor under this section. . . .

When an obligor exercises his right to rescind . . . any security interest given by the obligor becomes void . . .

15 U.S.C. § 1635(a)–(b). Not every loan transaction which results in a security interest in the debtor's residence is subject to this statutory right of rescission. The transaction must be otherwise subject to the Act, i. e., it must be a consumer loan rather than a business or commercial one. *Sapenter v. Dreyco, Inc.,* 326 F.Supp. 871 (D.C.La.), *aff'd* 450 F.2d 941 (5th Cir. 1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972); Federal Reserve Board staff letter No. 751 [1969–1974 Transfer Binder] Consumer Credit Guide (CCH) § 31,070 (Jan. 14, 1974).[1] In order to provide full protection, the strictures of the Act had to be extended beyond initial loans. Thus, "[i]f any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this part." 12 C.F.R. § 226.8(j).

In order to resolve this case, the relationship between the parties must be analyzed step-by-step, focusing on each transaction separately. The pleasure boat loan was clearly a consumer loan transaction and, thus, fell within the restrictions of the Act. Appellant does not raise any issue of failure of the bank to comply with the Act in conjunction with this loan. Just as clearly, the original $12,000 loan was for business purposes and, thus, exempted from the Act.

This battle is waged over the nature of the May 10 and September 29 refinancings. Was the May 10 refinancing of the $12,000

loan a consumer loan transaction by virtue of the fact it was Mrs. McGarr's first involvement with this transaction and her motive was to aid her husband in his financial problems? Was the September 29 refinancing of that loan a consumer loan transaction for the reason that it staved off foreclosure on the McGarr home, a result which would likely have greater personal than business overtones for the McGarrs?

We reject any such shifting concept of these loan transactions. Such a view would create uncertainty in the application of the Act and could completely swallow the business purpose exception. The only workable approach is to characterize a loan transaction by the use to which the proceeds are originally placed and maintain the same characterization throughout the life of the loan.

We also reject as unworkable Mrs. McGarr's argument that as to her the May 10, 1976, refinancing was of a "personal" nature. This would also operate to swallow the business purpose exception. Many family-run businesses are operated by one or the other of the spouses, but not by both. Yet, under Iowa law both spouses must join in order to execute a valid mortgage. *See* § 561.13, The Code. Thus, all such transactions would be subject to the argument that as to the nonbusiness spouse the loan is for personal purposes (to help the other spouse) and, thus, the transaction is a consumer credit loan. Such a construction would not advance the purpose of the Act—to promote the informed use of *consumer* credit. The decision to pledge one's home as security for a business loan does not lose its quality as a business decision merely because of the nature of the collateral.

We are faced then with the determination of the status of a loan which consolidates a consumer loan and a business loan. Regulation Z provides that such a "transaction shall be considered a new transaction subject to the disclosure requirements" of the Act. 12 C.F.R. § 226.-

1. For discussion of the weight we give to Federal Reserve Board staff letters, *see Northwest*

*Bank & Trust Co. v. Gutshall,* 274 N.W.2d 713, 719–20 (Iowa 1979).

8(j). However, transactions are only subject to the Act and its disclosure requirements if they constitute consumer transactions rather than ones for business or commercial purposes. In order to determine whether the September 29 consolidation loan constitutes a consumer credit transaction, reference must be had to the statutory definition of that term.

> The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes.

15 U.S.C. § 1602(h). Since this money was extended to a natural person, the resolution of this issue turns on whether "the money [was used] primarily for personal, family, household, or agricultural purposes." Our research has revealed no court decisions considering how to apply this test to the hybrid situation confronting us, where part of the loan proceeds were used for personal purposes and the rest for business purposes. However, the Federal Reserve Board has suggested that under those circumstances a court must balance the conflicting uses and determine which purpose predominates.

> You inquire as to whether the right of rescission is applicable in the case where a customer executes a nonpurchase money first lien deed of trust on his principal residence if a portion of the proceeds is used to pay off a prior deed of trust on the residence and the balance is used for business purposes.
>
> The rescission provision would apply if the proceeds were used principally to pay off the prior deed of trust. . . . While the definition of "primarily" is a matter for the courts to decide, we advise, as an abundance of caution, to comply with the rescission provision of the Act where the use of the proceeds is questionable.

Federal Reserve Board staff letter No. 374, [1969–74 Transfer Binder] Consumer Credit Guide (CCH) § 30,552 (July 17, 1970). Applying that test we conclude that a transaction in which the ratio of private purpose funds to business purpose funds is only slightly greater than one-to-twelve is not primarily for personal purposes. Since the September 29 loan transaction was not a consumer credit transaction, the Truth-in-Lending Act was inapplicable to it and no such statutory right of rescission existed.

Since neither the May 10 nor the September 29 transactions were subject to the Truth-in-Lending Act, Mrs. McGarr's attempt to rescind the loan transactions was ineffectual. Therefore, the trial court did not err in ordering foreclosure.

AFFIRMED.