[No. 6717–3–III. Division Three. January 9, 1986.]

DOROTHY CONRAD, *Appellant,* v. JOHN H. SMITH, JR., ET AL, *Respondents.*

*Lawrence A. Weiser* and *Jeffrey H. Hartje* of *University Legal Assistance,* for appellant.

*Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo,* for respondents Smith.

*Robert W. Walker,* for respondents Brazington, et al.

THOMPSON, J.—Dorothy Conrad appeals the dismissal of her claims for violation of the federal Truth in Lending Act and the Washington State Usury Act in a summary judgment proceeding. We affirm.

In 1981, Frank and Dorothy Conrad obtained a $5,250 loan from Pacific Security Companies, using their home as security. The Conrads executed a Certificate of Business

Purpose stating the loan was for commercial purposes.[1] The Conrads defaulted and foreclosure proceedings were initiated; a trustee's sale was set for November 26, 1982. On October 7, 1982, Mr. Conrad contacted Consumer Loan Services (CLS), a loan broker, to refinance the defaulted loan.

On that date, Stanley Brazington, loan officer for CLS, helped Mr. Conrad fill out an application for a $9,000 loan. This figure included the Pacific Security loan balance of $7,299.31, together with closing costs and an 11 percent fee charged by CLS for procuring a lender. The loan application contained the following information: Mr. Conrad was self–employed by Cascade Builders; Cascade Builders' address was listed as Mr. Conrad's residence; Mr. Conrad's income from Cascade Builders was $800 per month; and the purpose of the loan was "business".

Acting on behalf of the Conrads, CLS found a potential lender; however, when a title report disclosed unpaid real estate taxes, a judgment lien, an IRS lien, and a Washington State tax warrant, Mr. Conrad was informed the liens would have to be removed before a lender would be secure. The parties agreed the amount loaned should be increased to cover the additional sums. The first lender was not interested in a loan above the original amount, so CLS found Dr. and Mrs. John H. Smith who agreed to loan $15,835.42 at 21 percent interest, secured by a deed of trust on the Conrads' home. Both the loan statement and promissory note signed by the Conrads contained a statement that the loan was being made for commercial purposes. The loan proceeds were used to discharge all encumbrances against the house except the first mortgage. No disclosures were made under the federal Truth in Lending Act.

The Conrads subsequently defaulted and the Smiths initiated foreclosure proceedings on October 7, 1983. Mrs. Conrad rescinded the loan on March 2, 1984, and com-

---

[1]According to Mr. Conrad, the loan proceeds were used to start their son in the siding business.

menced an action against the Smiths, Brazingtons, and the deed trustee alleging violation of the Truth in Lending Act, Washington State Usury Act, and Consumer Protection Act. By amended complaint Frank Conrad was joined as a plaintiff.[2] The court granted the request for a temporary restraining order and then a preliminary injunction to prevent the trustee's sale.[3] On August 29, 1984, the court granted the Smiths' motion for summary judgment.

The Conrads' claims were dismissed by summary judgment; thus, this court must determine whether genuine issues of material fact exist or whether the Smiths are entitled to judgment as a matter of law. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). "On summary judgment motions, the reviewing court takes the position of the trial court, assuming facts most favorable to the nonmoving party". *Hartley,* at 774.

The Truth in Lending Act (TILA) was enacted to promote the informed use of credit by requiring lenders to make meaningful disclosure of credit terms in a form easily understood by borrowers.[4] *Mullen v. North Pac. Bank,* 25 Wn. App. 864, 869, 610 P.2d 949, *review denied,* 94 Wn.2d 1009 (1980). 12 C.F.R. § 226 (1981) (Regulation Z) contains regulations promulgated by the Federal Reserve Board to carry out the purposes of the TILA. 2 Washington State Bar Ass'n, *Commercial Law Deskbook* § 23.1, at 23–3 (1982). If disclosure is not made in a credit transaction in

---

[2]Frank Conrad has not joined in this appeal.

[3]Mrs. Conrad also requested a stay of the trustee's sale pending the outcome of this appeal. Although granted without the necessity of posting a bond, the stay was conditioned on the loan payments to the Smiths remaining current. When this condition was not met, the stay terminated in January 1985. The Supreme Court denied Mrs. Conrad's request for an emergency stay of the March 29, 1985 trustee's sale.

[4]15 U.S.C. § 1601(a) (1982) provides in part: "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."

which the lender receives a security interest in the borrower's residence, the borrower has the right to rescind the transaction until midnight of the third business day following receipt of the required disclosures. *Toy Nat'l Bank v. McGarr,* 286 N.W.2d 376, 377–78 (Iowa 1979). When the borrower exercises his right to rescind, the security interest becomes void. *Toy Nat'l Bank,* at 378; 15 U.S.C. § 1635(a) (1982). Further,

> "[i]f any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this part." [Former] 12 C.F.R. § 226.8(j).

*Toy Nat'l Bank,* at 378.[5]

 However, credit transactions "involving extensions of credit primarily for business [or] commercial . . . purposes . . ." are exempt from the TILA. 15 U.S.C. § 1603(1) (1982); 12 C.F.R. § 226.3(a) (1984). *See* Annot., *What Constitutes "Business or Commercial" Purpose Within Meaning of § 104(1) of Truth in Lending Act (15 USCS § 1603(1)), Exempting Business or Commercial Credit Transactions From Act,* 54 A.L.R. Fed. 491 (1981). Whether a loan is for personal or business purposes appears to be a factual question to be answered only after evaluating the circumstances surrounding the transaction. *See Thorns v. Sundance Properties,* 726 F.2d 1417, 1419 (9th Cir. 1984); *Tower v. Moss,* 625 F.2d 1161, 1166–67 (5th Cir. 1980). Mrs. Conrad argues a genuine issue of fact exists as to the purpose of the loan which precludes summary judg-

---

[5]12 C.F.R. § 226.20(a) (effective 1981) provides:

"(a) *Refinancings.* A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer."

12 C.F.R. § 226.23(f)(2) (effective 1982) provides:

"(f) *Exempt transactions.* The right to rescind does not apply to the following:

". . .

"(2) A refinancing or consolidation by the *same creditor* of an extension of credit already secured by the consumer's principal dwelling." (Italics ours.)

ment. The alleged factual dispute centers on whether Mr. Conrad stated the purpose of the loan to be "business" or to be personal, *i.e.*, to prevent a trustee's sale of the family home. Mrs. Conrad claims the purpose was the latter.

█ Generally, a question of fact is properly left to the trier of fact; however, "when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law". *Hartley*, at 775; *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975). Here, when deposed, Mr. Conrad, whose background includes 2 years of college and knowledge of the TILA through his occupation as a siding salesman, stated the following:

A. Well, you're asking me if I read this [promissory note] in its entirety before signing it?
Q. That was my question.
A. Let me see it.
Q. (Handing witness a document.)
A. Yes, I read this.
Q. You did read it?
A. Yes, sir.
Q. And did you understand the contents?
A. Yes, sir.
Q. Did your wife read it?
A. Yes, sir.
. . .
Q. Did you ever tell Mr. Smith, my client, that this loan was for a consumer purpose and not for a business or commercial purpose?
. . .
THE WITNESS: I don't believe it ever come up [*sic*].
Q. (BY MR. DELAY) Never came up. In fact, you represented to him in this document, the promissory note, that it was for a commercial or business purpose, did you not?
A. I did?
Q. Yes, right there. Showing you paragraph [*sic*], for the record—
A. And I said the loan—the loan was to pay off Pacific Security. They put that in there. . . .
. . .
Q. You knew this note was going to be passed on to Mr. Smith, did you not . . .

A. Yeah, that's the only way he would go for it.

Q. Right. And you knew Dr. Smith would rely upon this promissory note, did you not?

A. Yeah, I suppose he did . . .

. . .

Q. Why didn't you ask Mr. Waldo to delete that paragraph if it wasn't correct, sir?

A. If it wasn't correct?

Q. Yes.

A. Because that was the only way I could get the loan, and I was desperate.

The facts supplied by pleadings, depositions, interrogatories, affidavits and accompanying exhibits support the conclusion that the loan was procured by the Conrads for the business purpose of repaying the Pacific Security loan.

Although both the Smiths and Mrs. Conrad have provided numerous citations to support their positions, *Toy Nat'l Bank* and *Anderson v. Lester,* 382 So. 2d 1019 (La. Ct. App. 1980), *cert. denied,* 450 U.S. 1045 (1981) appear to be most directly in point. *Toy Nat'l Bank* involved the refinancing and consolidation of a consumer loan ($1,016.83) with a business loan ($13,077.09) secured by a second mortgage on the borrower's home. The borrower wife rescinded the loan, claiming it was a consumer loan transaction by virtue of the fact it was her first involvement with this transaction, her motive was to aid her husband in his financial problems, and the loan staved off foreclosure on the home. The court, in rejecting these claims, held at page 378 that a loan transaction should be characterized by the original use of the proceeds and the same characterization should continue throughout the life of the loan. *See also First Nat'l Bank v. Skidis,* 82 Ill. App. 3d 602, 403 N.E.2d 56 (1980) (a personal benefit such as the retirement of the borrower's judgment lien was to facilitate the obtaining of the loan and was not the purpose for which the loan was obtained).

On the other hand, in *Anderson v. Lester, supra,* the loan was determined to be for consumer purposes because the borrowers entered into the transaction to prevent sei-

zure of their home, the funds were applied to selected debts which represented the most immediate threats to the home, and the lender testified he was aware of this concern for the home and the purpose of the loan. Here, the record is devoid of evidence the Smiths were aware the loan was for any purpose other than "business". The record is also replete with evidence that Mr. Conrad made numerous representations to CLS and the Smiths during the loan process with the apparent intention of obfuscating matters. While we do not adopt the broad holding of *Toy Nat'l Bank,* that the loan's original characterization controls throughout the life of the loan in all cases, we find the particular facts of the instant case warrant such a result.[6]

Finally, an action to rescind under the TILA is an equitable proceeding and the court "should look not only at the violations by the creditor but should consider the course of action taken by the debtor". *Turner v. West Memphis Fed. Sav. & Loan Ass'n,* 266 Ark. 530, 538, 588 S.W.2d 691, 695 (1979). Although this rule is generally applied to the debtor's conduct subsequent to the transaction, we hold this rule applies to Mr. Conrad's preloan conduct. In summary, we conclude the Conrads' loan was made for commercial purposes, and as such, the TILA does not apply.

Next, Mrs. Conrad claims a violation of RCW 19.52, the usury statute. However, RCW 19.52.080 provides an exemption for transactions "primarily for agricultural, commercial, investment, or business purposes". Since we have determined the loan was made for business purposes, this claim must also fail.

Finally, the Smiths have requested attorney fees and costs for this appeal based on provisions in the promissory note and deed of trust. Pursuant to RAP 18.1, we grant this

---

[6]Official Staff Interpretations to the Code of Federal Regulations enumerate certain factors for determining whether a loan is for business or consumer purposes, including the borrower's statement of purpose for the loan. 12 C.F.R. § 226 Supp. 1, § 226.3(a)(2) (1983).

request and remand for a determination of appropriate attorney fees and costs.

Affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Review denied by Supreme Court March 21, 1986.