[No. 8796-1-II.   Division Two.   June 9, 1987.]

DANA BROWN, ET AL, *Respondents,* v. SHARON M. GIGER, *Appellant.*

---

*David V. Johnson* and *Johnson & Rutz,* for appellant.

*Gary W. East,* for respondents.

REED, C.J.—The defendant, Sharon Giger, appeals a summary judgment in favor of plaintiffs for the accelerated amount of a promissory note and foreclosure on Giger's seller's interest in a real estate contract given as security for the loan. We reverse.

Sharon Giger borrowed $33,000[1] from the plaintiffs, who

---

[1]Although the face amount of the note was $33,000, Giger received only $28,376.50, after "loan costs" were deducted as follows:

| | |
|---|---|
| Title Insurance and Tax | $284.88 |
| Appraisal Fee | 200.00 |
| Escrow Fee and Tax | 312.62 |
| Recording Fees | 14.00 |
| 10% "Finance Fee" to CLS | 3,300.00 |
| "Collection Fee" to Evergreen Services | 512.00 |

are five married couples. The loan was arranged through a lending broker, Consumer Loan Services of Lynnwood (CLS). The interest on the face of the note was 16 percent. The legal rate was then 12.8 percent. RCW 19.52.020. As security, Giger assigned her vendor's interest in a real estate contract.

H. Neil Ebling, a friend of Giger's, was the actual recipient of the funds borrowed. Ebling used the money to establish a mini–mart and restaurant business in Joyce, Washington. It is undisputed that Giger's only purpose for borrowing the funds was to loan to Ebling, out of friendship, the capital he needed for this business venture. Giger's loan to Ebling carried no interest. The agreement between them was undocumented, but it was understood that Giger was to receive no ownership rights in the business, no share of the profits, and no rights to management or control. Nor was she to receive any bonus upon the intended subsequent sale of the business. Ebling promised that he would make the monthly interest payments to Giger, so that she in turn could pay CLS, according to schedule. He promised to pay the balance of the loan when the business was sold. This was to be at the end of a 2–year period, in order to coincide with the final balloon payment on Giger's real estate contract.

It was Ebling, not Giger, who went shopping for the loan and first contacted CLS. He arranged for the loan to be closed in the Lynnwood offices of CLS. Giger, Ebling and Richard Walker, vice–president of CLS, were present. Walker was advised that the money would be used by Ebling to purchase the mini–mart, and that Giger would have no interest in the mini–mart business. Giger signed a number of loan documents prepared by CLS containing language to the effect that the loan was for business purposes.

Giger endorsed the check for the loan proceeds directly to Ebling. She was not present at the closing of the mini–mart purchase, and never saw books or records of the mini–mart business. She was never informed specifically what

assets were purchased and never knew the exact disposition of any of the funds. She visited the mini–mart briefly on two occasions.

Four months after the loan was executed, it went into default. Ebling failed to make the monthly interest payments to Giger, who consequently was unable to meet her obligation to the plaintiffs. The plaintiffs brought this suit to foreclose on the security. Giger counterclaimed, alleging that the transaction violated Washington's usury laws. The parties stipulated that there were no disputed questions of fact, and filed cross motions for summary judgment on the single issue whether this loan was for business purposes under RCW 19.52.080 and, therefore, is exempt from usury sanctions. Plaintiffs' motion was granted, and from that judgment Giger appeals.

The plaintiffs assert, and the trial court agreed, that this transaction is exempt from usury restrictions by the terms of RCW 19.52.080. That statute provides, in relevant part:

> persons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount.
>
> Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

■ We begin with the proposition that the burden is upon the plaintiffs to prove that the loan qualifies for this narrow exemption. In *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 691 P.2d 581 (1984), a panel of this court stated "when a loan is usurious on its face, . . . the burden is upon the lender to prove that its loan qualifies for the narrow transaction exemption." *Aetna,* 38 Wn. App. at 924–25.[2]

---

[2]Since the transaction at issue in *Aetna* the Legislature has broadened the business exemption. The exemption was at that time limited to transactions in excess of $50,000 made *exclusively* for business purposes. The present language of RCW 19.52.080 was adopted in 1981. The rule announced in *Aetna,* however, still applies to transactions governed by the amended statute.

The plaintiffs argue that the loan was for business purposes and therefore is not usurious on its face, and consequently the rule of *Aetna* does not apply. They urge us to apply the "2–hypothesis rule," placing the burden on the borrower to prove that the loan was not within the exemption. Under that rule of construction, where the loan contract is susceptible of two constructions, the one lawful and the other unlawful, the former will be adopted. *Aetna,* 38 Wn. App. at 924; *Rouse v. Peoples Leasing Co.,* 96 Wn.2d 722, 638 P.2d 1245 (1982).

We conclude, however, that this loan is usurious on its face because each of the elements of usury appears on the face of the loan contract. *See Aetna,* 38 Wn. App. at 923–24. Contrary to the plaintiffs' arguments, "the absence of an exemption under RCW 19.52.080 is not an element of usury." *Aetna,* 38 Wn. App. at 925. "[T]he 2–hypotheses rule does not apply when a loan contract clearly is usurious on its face, and the only question is whether the facts of the case show that the loan is exempt from the otherwise applicable usury law." *Aetna,* 38 Wn. App. at 925; *Gemperle v. Crouch,* 44 Wn. App. 772, 724 P.2d 375 (1986).

The only question here is whether the business exemption applies under the undisputed facts recited above. Therefore the burden is on the plaintiffs to show that it does. The plaintiffs have not met their burden of proof.

■ We conclude that the loan does not qualify for the exemption because it was not for Giger's business purpose, but rather is more properly characterized as personal in nature. In *Aetna,* 38 Wn. App. at 927, we said "In characterizing the purpose of the loan, we look for evidence of the use to which the borrower intended to put the loan proceeds at the inception of the loan contract." Here, Giger was the borrower, not Ebling. It was she who bore the entire obligation to the plaintiffs. The risk incurred was hers alone. "Characterizing the purpose of the loan according to the *specific use to which the borrower intended to put the loan proceeds* is consistent with the Legislature's purpose in enacting the usury law". (Italics ours.) *Aetna,* 38

Wn. App. at 927.

Here, it is undisputed that Giger's specific intended use of the funds was to loan them to a friend, at no interest, at no business advantage to herself. It is undisputed that she had no pecuniary interest in Ebling's subsequent business use of the funds. She expected no profit. Her specific purpose was therefore personal in nature.

We believe that Ebling's intended use of the funds is irrelevant because he incurred none of the risk associated with this loan transaction. In characterizing the purpose of a loan transaction under RCW 19.52.080, we deem it necessary to limit the inquiry to the specific purpose of those persons who are legally obligated by the transaction. *Cf.* Annot., *What Constitutes "Business or Commercial" Purpose Within Meaning of § 104(1) of Truth in Lending Act (15 U.S.C.S. § 1603(1)), Exempting Business or Commerce Credit Transactions From Act,* 54 A.L.R. Fed. 491 (1981) (The purpose for the loan on the part of the legal obligor is the controlling factor.). The purpose of the usury laws is to prevent individuals from incurring debts, at high interest rates, for nonbusiness purposes. *Aetna,* 38 Wn. App. at 927. RCW 19.52.005. Consistent with this policy, when applying the exemption, we should look no further than to the purpose of the individual who incurs the debt. Here, that purpose was personal.

■ Giger signed a number of documents which contained boilerplate language to the effect that the loan was for business purposes. "The borrower's intended use for the loan proceeds must be characterized according to the manifestations of intent, if any, that the borrower made to the lender at the time the parties entered into the loan contract." *Aetna,* 38 Wn. App. at 927. The plaintiffs urge us to place great significance on the manifestations of intent expressed in the loan documents themselves. However, this asks us to ignore that the parties do not dispute the fact that Walker was made aware that Giger intended to loan the funds to Ebling and that she would have no interest in the mini–mart. Moreover, "a borrower's acquiescence in a

scheme to avoid the usury law does not make the transaction qualify for the exemption in RCW 19.52.080." *Aetna,* 38 Wn. App. at 928.

We recognize that the borrower's execution of a certificate of business purpose and additional loan documents referring to a business purpose was considered highly significant in *Conrad v. Smith,* 42 Wn. App. 559, 712 P.2d 866 (1986). In that case, however, the exemption was deemed to apply because the record was devoid of evidence that the lenders were aware that the purpose was for anything but business. Further, the borrower "made numerous representations to CLS and the [lender] during the loan process with the apparent intention of obfuscating matters." *Conrad v. Smith,* 42 Wn. App. at 566.

Here, there were no false representations. Walker knew that Giger would have no interest in the mini–mart. If the lender seeks to charge a usurious rate of interest, we deem it incumbent upon him to determine that some individual who incurs the obligation has a business purpose. Plaintiffs' motion for summary judgment should not have been granted. Because Giger should have prevailed, it was error to award the plaintiffs attorney's fees and costs.

The judgment of the trial court is reversed; the cause is remanded for entry of summary judgment in favor of the defendant,[3] and for a determination of damages, penalties and trial attorney fees in favor of the defendant pursuant to RCW 19.52.030. Defendant also is awarded attorney fees on appeal in an amount to be determined by the trial court.

ALEXANDER, J., concurs.

WORSWICK, J. (dissenting)—Sharon Giger decided to provide Neil Ebling with money to start a business. She borrowed it from the plaintiffs. Undoubtedly, she trusted Ebling to pay it back, but he did not. Now called upon to pay, Giger claims that the loan was something other than it

---

[3]There were cross motions for summary judgment in the trial court.

obviously was, a transaction primarily for business purposes. The majority agrees with Giger. I do not.

Although the majority relies heavily on *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 691 P.2d 581 (1984), it ignores two significant holdings of the case: (1) that the lender there did not establish that the loan was *exclusively* for business purposes; and (2) substance, not form, determines whether a loan is usurious. As to (1), the majority concedes that the statute has since been amended (see footnote 2), but assigns no significance to this. As to (2), the majority ignores this principle and here exalts form over substance, precisely what *Aetna* said should not be done. *Aetna,* 38 Wn. App. at 925. *See also Clausing v. Virginia Lee Homes, Inc.,* 62 Wn.2d 771, 384 P.2d 644 (1963).

The statutory change is significant. There may have been room under the previous language for Giger to argue that, because part of the reason for the loan was to let her feel good about helping a friend, it was not "exclusively" for business purposes. There is no room for this argument now.

The substance of the transaction was entirely for business purposes. Ebling wanted to start the business. He shopped for the loan and located a lender. He was present at the closing. Giger immediately endorsed the check for the loan proceeds to Ebling. Absolutely everyone knew that the money was for Ebling's business.

The majority at page 176 states that the loan should be characterized according to the specific use of the money intended by the borrower. I agree. Giger, the borrower, specifically intended that the money be used to start Ebling's business. Therefore, I dissent for the reasons stated by the majority. *See State v. Hornaday,* 105 Wn.2d 120, 132, 713 P.2d 71 (1986) (Brachtenbach, J., dissenting).

Review granted by Supreme Court September 1, 1987.