116 P.3d 421 (2005)
CASHMERE VALLEY BANK, a Washington corporation, Respondent,
v.
Terry B. BRENDER, a single man, Petitioner.
Nos. 22764-2-III, 23239-5-III.
Court of Appeals of Washington, Division Three, Panel Six.
July 21, 2005.
*423 Douglas J. Takasugi, Jeffers, Danielson, Sonn & Aylward PS, Wenatchee, WA, for Petitioner.
Brian A. Walker, Attorney at Law, Wenatchee, WA, for Respondent.
KURTZ, J.
¶ 1 Cashmere Valley Bank (CVB) filed an action against Terry B. Brender to collect on a promissory note and recover the collateral pledged to secure the loan. In response, Mr. Brender alleged several counterclaims and affirmative defenses, including: (1) violation of the federal truth in lending act (TLA); (2) violations of the Washington State Consumer Protection Act; (3) fraud or misrepresentation; (4) breach of the covenant of good faith and fair dealing; and (5) breach of contract. Both parties filed motions for summary judgment. Mr. Brender appeals the trial court's dismissal of his counterclaims and affirmative defenses. We affirm the decisions of the trial court.

FACTS
¶ 2 CVB filed an action against Terry B. Brender to collect on a promissory note dated November 30, 2001, and to recover the collateral pledged to secure the loan (2001 Loan). This loan was a renewal of loans made in 1993 and 1996.
¶ 3 1993 Loan. The first loan was made in 1993 (1993 Loan) for the amount of $358,095.70. Mr. Brender obtained this loan with the assistance of his personal banker, Jim Geary. At the time of the 1993 Loan, Mr. Brender was in default on pre-1993 loans, and CVB had initiated an action to collect on the unsecured debts.
¶ 4 To obtain the 1993 Loan, and settle CVB's lawsuit, Mr. Brender was required to pledge his orchard, shake mill, and mobile home, free and clear of his wife's interests. The couple was in the process of getting a divorce, and Ms. Brender owned a one-half interest in these properties. Ms. Brender agreed to release her interests for approximately $150,000. As a result, $200,000 of the $358,095.70 loan was used by Mr. Brender to pay off the preexisting business loans. But Mr. Brender used the remaining $150,000 to buy out Ms. Brender's interests in the orchard, shake mill, and mobile home. Mr. Brender then pledged these properties as collateral for the 1993 Loan.
¶ 5 As part of the 1993 Loan, Mr. Brender signed a Disbursement Request and Authorization representing and warranting to CVB that this loan was primarily for business purposes.
¶ 6 There is a dispute over the terms of the initial 1993 Loan. Mr. Brender contends the initial terms of the 1993 Loan were for him to pay the $358,095.70 principal at 8.5 percent interest over a 15-year period, with quarterly payments of $7,500. Apparently, no one was able to produce a copy of this promissory note. However, Mr. Geary admits that he discovered an amortization problem and that the 1993 Loan was revised.
¶ 7 In any event, ultimately the terms of the 1993 Loan were revised in October 1993, when Mr. Brender signed a second promissory note increasing the amount of quarterly payments to $10,694.44, so that the principal would be correctly amortized and would not result in a negative amortization. Under the terms of the loan, a balloon payment was due in June 1996.
¶ 8 After executing the revised note, Mr. Brender made advance payments on the Revised 1993 Loan and when the 1993 Loan matured in June 1996, Mr. Brender had paid to CVB approximately $45,000 more than he was obligated to pay under the Revised 1993 Loan.
¶ 9 1996 Renewal. In June 1996, the 1993 Loan matured and the unpaid balloon payment was due. Mr. Brender then signed a note (1996 Loan) that renewed the 1993 Loan. Mr. Brender admits signing the 1996 Loan. At the time the 1996 Loan was executed, Mr. Brender also signed a Disbursement Request and Authorization.
¶ 10 1999 Loan. In 1999, Mr. Brender borrowed additional funds from CVB. Mr. Brender provided a financial statement showing *424 the amount due on the 1996 Loan. This statement indicated that Mr. Brender believed that $225,000 was due on the 1996 Loan and that the quarterly payments were approximately $7,950.
¶ 11 2001 Loan. In 2001, Mr. Brender signed a note to refinance the 1999 Loan and the 1996 Loan into one loan.
¶ 12 Issues Resolved on Summary Judgment. In response to CVB's action, Mr. Brender alleged several counterclaims and affirmative defenses, including: (1) violation of the TLA; (2) violations of the Washington State Consumer Protection Act; (3) fraud or misrepresentation; (4) breach of the covenant of good faith and fair dealing; and (5) breach of contract. The parties each filed motions for summary judgment.
¶ 13 On appeal, Mr. Brender contends the trial court erred by: (1) concluding the TLA did not apply to the loans between CVB and Mr. Brender; (2) dismissing Mr. Brender's remaining counterclaims and affirmative defenses based on the statute of limitations and the doctrine of account stated; and (3) concluding that Mr. Brender failed to provide any basis for his claims alleging fraud, misrepresentation, breach of contract, or breach of the covenant of good faith and fair dealing.

ANALYSIS
¶ 14 Standard of Review. When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321 (1998).
¶ 15 Federal Truth in Lending Act. Mr. Brender maintains that the TLA applies because his loan was incurred primarily for a personal purpose. In contrast, CVB contends the TLA does not apply because the loan proceeds were used for business purposes. The court agreed with CVB, dismissing Mr. Brender's claim under the TLA.
¶ 16 The TLA was designed to promote the informed use of credit by requiring lenders to make meaningful disclosure of the credit terms in a manner easily understood by borrowers. See 15 U.S.C.A. § 1601; Conrad v. Smith, 42 Wash.App. 559, 562, 712 P.2d 866 (1986). The TLA applies only to consumer transactions. 15 U.S.C.A. § 1603(1). The TLA may be enforced by various federal agencies, but the TLA also establishes a cause of action by a consumer against a creditor who fails to make the proper disclosures. 15 U.S.C.A § 1640(a). A private cause of action alleging a violation of the TLA may be brought in federal or state court. 15 U.S.C.A. § 1640(e).
¶ 17 The loan in question here is a hybrid loan because it was made for both consumer and business purposes. See Fed. Land Bank v. Kennedy, 662 F.Supp. 787 (N.D.Miss. 1987). As a result, the determination regarding whether the TLA applies must be based on an inquiry into whether the loan is primarily a commercial loan or primarily a consumer loan. Courts have used several methods when conducting this inquiry.
¶ 18 Quantitative Approach. Some courts have applied a mathematical inquiry to determine whether the TLA applies. These courts make this determination based on whether a majority of the loan proceeds were used for commercial purposes or consumer purposes. See Bokros v. Assocs. Fin., Inc., 607 F.Supp. 869 (N.D.Ill.1984); Stillman v. First Nat'l Bank, 117 Idaho 642, 791 P.2d 23 (1990).
¶ 19 In Stillman, the court concluded, as a matter of law, that a loan was exempt from the application of the TLA where the debtor had borrowed $32,000 and used $16,411 for business purposes and $15,559 for personal purposes. Stillman, 117 Idaho at 644, 791 P.2d 23. In reaching this conclusion, the court applied a strictly quantitative approach and determined that more than one-half of the proceeds were used for a purpose that was exempt under the TLA. Id.
¶ 20 Mr. Brender contends that Stillman involved a single loan and is inapplicable here. He points out that the only reason he was borrowing money from CVB was to settle his divorce; he was not borrowing money for two purposes, one exempt and one nonexempt.
*425 ¶ 21 But this argument is unpersuasive; the undisputed facts demonstrate that prior to the 1993 Loan, Mr. Brender was in default on unsecured business debts owed to CVB. To receive the 1993 Loan, Mr. Brender had to pledge his orchard, shake mill, and mobile home. Mr. Brender was involved in a divorce and Ms. Brender owned a one-half interest in these properties. Mr. Brender used approximately $200,000 of the 1993 Loan to pay off the pre-1993 business loans, and approximately $150,000 of the 1993 Loan to buy out Ms. Brender's interests. Mr. Brender was then able to use these properties to secure the loan.
¶ 22 Applying the quantitative analysis to the facts here, more than one-half of the proceeds of the 1993 Loan were used for business purposes and the 1993 Loan was exempt from the TLA. Accordingly, under the analysis adopted in Stillman, the 1993 Loan would be exempt from the application of the TLA. Because all of the subsequent loans were simply renewals of the 1993 Loan, these loans also would be exempt under this analysis.
¶ 23 Original Purpose. Another approach used to determine the character of a hybrid loan examines the original character of the loan and the predominating purpose of the loan. See Toy Nat'l Bank v. McGarr, 286 N.W.2d 376 (Iowa 1979).
¶ 24 In Toy, a consumer loan of $1,016.83, was refinanced and consolidated with a business loan of $12,035.26, and the resulting loan of $13,077.09 was secured by a second mortgage on the debtor's home. Id. at 377. The borrower's wife rescinded the loan, arguing that this was her first involvement with the loan and that her intent was to assist her husband with his financial problems and avoid foreclosure of their home. She maintained that the loan was for personal purposes and that the TLA applied. Toy held that the use of the proceeds of the original loan should be used to characterize the loan throughout the life of the loan. Id. at 378.
¶ 25 All Circumstances. In Conrad, the court considered a transaction that was not a hybrid loan. The borrower obtained a loan to refinance a prior commercial loan with additional funds necessary to pay off liens on the borrower's house, which was to be used as security for the refinanced loan. The loan statement and the promissory note contained a statement that the loan was made for commercial purposes, but the proceeds of the loan were used to discharge all encumbrances against the house, except the first mortgage. When the borrowers defaulted on the loan, the lenders initiated foreclosure proceedings and the borrowers initiated an action alleging a violation of the TLA. Conrad, 42 Wash.App. at 561-62, 712 P.2d 866.
¶ 26 In Conrad, the court determined that Toy and Anderson v. Lester, 382 So.2d 1019 (La.Ct.App.1980), were the most directly on point. Conrad, 42 Wash.App. at 565, 712 P.2d 866. In Anderson, the loan in question was determined to be a consumer loan because the borrowers entered into the transaction to prevent the seizure of their residence and to pay off those debts that constituted the most immediate threat to the residence. Moreover, the lender testified that he was aware of this concern and the purpose of the loan. Anderson, 382 So.2d at 1023.
¶ 27 Significantly, Conrad did not completely adopt Toy's holding that the original purpose of the loan controls throughout the life of the loan. But the court concluded that the facts in Conrad resulted in the same result. Conrad, 42 Wash.App. at 566, 712 P.2d 866. In Conrad, the court approved an expanded inquiry, concluding that the determination regarding whether a loan is for personal or business purposes is a question of fact requiring consideration of all of the circumstances surrounding the transaction. Id. at 563, 712 P.2d 866. Nevertheless, the court also concluded that the facts were sufficiently established to resolve the issue as a matter of law.
¶ 28 Mr. Brender relies heavily on Conrad. He urges this court to adopt a broader inquiry and consider all of the circumstances when examining the character of the loan in question. To advance his position, he relies on a statement in Conrad that: "Here, the record is devoid of evidence the [lenders] were aware the loan was for any purpose other than `business.'" Id. at 566, 712 P.2d *426 866. Based on this statement, Mr. Brender maintains that the evidence demonstrated that CVB was aware of the purpose of his 1993 Loan. However, as the trial court correctly noted here, Conrad did not involve a hybrid loan because the loan was obtained to refinance a prior commercial loan with additional funds to clear liens.
¶ 29 We adopt the Stillman quantitative approach to determining whether a hybrid loan is made for consumer or business purposes. The quantitative approach is the easiest to apply and it will promote certainty in the commercial marketplace. Conversely, a test for hybrid loans that examines all relevant circumstances will promote uncertainty and litigation. As already noted, the majority of the loan proceeds here were used for commercial purposes and, consequently, the loan is exempt from the application of the TLA for a business loan.
¶ 30 We conclude the court did not err by granting CVB's motion for summary judgment and dismissing Mr. Brender's TLA claims, including his affirmative defenses.
¶ 31 Doctrine of Account Stated. The court concluded that the doctrine of account stated applied to bar claims made related to the 1993 and 1996 Loans. The doctrine of account stated results from a manifestation by both the creditor and the debtor that the stated sum is an accurate computation of the amount due. Sunnyside Valley Irrigation Dist. v. Roza Irrigation Dist., 124 Wash.2d 312, 315, 877 P.2d 1283 (1994) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 282(1) (1981)). Evidence of assent in some form is required, but assent is determined by examining all of the circumstances and acts of the parties. Id. at 316, 877 P.2d 1283 (quoting Shaw v. Lobe, 58 Wash. 219, 221, 108 P. 450 (1910)). As a result, assent may be implied. Id. More importantly, payment, absent an object manifestation of protest or an intent to negotiate the disputed sum in the future, is sufficient to establish an account stated. Sunnyside Valley, 124 Wash.2d at 316 n. 1, 877 P.2d 1283.
¶ 32 The undisputed evidence here is sufficient to establish an account stated with regard to the 1993 Loan and the 1996 Loan. CVB provided Mr. Brender with quarterly statements related to both loans and Mr. Brender paid these amounts  and apparently made no agreement to renegotiation of these sums in the future. Along similar lines, Mr. Brender executed at least two promissory notes and three disbursement requests setting forth the amounts he owned to CVB and the terms of payment.
¶ 33 Mr. Brender contends that Rustlewood Association v. Mason County, 96 Wash.App. 788, 789-800, 981 P.2d 7 (1999), supports his position that the doctrine of account stated is inapplicable here. In Rustlewood, residents of a development sought to enjoin the county from imposing a utility surcharge to recover past expenditures exceeding the monthly fees previously paid by the residents. Concluding that the account stated doctrine did not apply, the court distinguished Sunnyside, based on the fact that the billing of monthly fees was not analogous to an open account because there was no need for complex accounting procedures and the rate was set by statutory procedure. Id. at 799, 981 P.2d 7. The court also noted that the parties did not dispute the fixed monthly amount. Id. at 799-800, 981 P.2d 7.
¶ 34 While the trial court here concluded that the doctrine of account stated applies to preclude Mr. Brender from challenging the debt owed on the 1993 and the 1996 Loans, the court refused to apply this doctrine to claims related to the 2001 Loan.
¶ 35 CVB argues that the court erred in its conclusion because Mr. Brender learned of the account balance and informed a bank official that he intended to pay this debt. Moreover, CVB points out that Mr. Brender received statements and had conversations with Mr. Geary about the account balance. In contrast, Mr. Brender contends that his account balance was incorrect, that he never received the loan printout that he requested, and that the payments on the loan were not the same from month to month.
¶ 36 Based on the evidence presented by Mr. Brender, we cannot conclude that the account stated doctrine applies to the 2001 Loan. While the parties agree that Mr. Brender *427 incurred a debt, the parties do not agree on the amount owed.
¶ 37 Statute of Limitations. In light of the trial court's decision to dismiss his claims regarding the 1993 Loan and the 1996 Loan based on the doctrine of account stated, Mr. Brender contends that the discovery rule applies to toll the statute of limitations on these claims.
¶ 38 The discovery rule applies to toll the applicable statute of limitations when an aggrieved party, through the exercise of due diligence, could have discovered that a claim existed. Hudson v. Condon, 101 Wash. App. 866, 875, 6 P.3d 615 (2000). The claimant need not be aware of the full extent of the damages, but knowledge of some actual appreciable damage is sufficient to commence the statute. Id.
¶ 39 Mr. Brender's claims are based on allegations of improper conduct by CVB dating back to 1993. For example, Mr. Brender alleges that he had a closed door meeting with Mr. Geary during which Mr. Geary cornered him and insisted that he sign the revised note. This meeting should have put Mr. Brender on notice of a possible claim against CVB. Moreover, Mr. Brender received statements showing the amount of quarterly payments due pursuant to the revised note. In June 1996, Mr. Brender paid off the 1993 Loan by refinancing the debt into the 1996 Renewal. Mr. Brender also signed a new promissory note and a disbursement request and authorization stating the amount refinanced. After the 1996 Loan was executed, Mr. Brender received quarterly statements from CVB.
¶ 40 Based on this evidence, the trial court correctly determined that the discovery rule did not apply to toll the statute of limitations as to Mr. Brender's claims regarding the 1993 Loan and the 1996 Loan.
¶ 41 Mr. Brender also argues that the statute of limitations does not run with regard to his affirmative defenses. Mr. Brender points out that statute of limitations periods do not run against defenses arising out of the transaction sued upon. See Allis-Chalmers Corp. v. City of North Bonneville, 113 Wash.2d 108, 112, 775 P.2d 953 (1989).
¶ 42 However, Mr. Brender's claims under the TLA and the Consumer Protection Act cannot be advanced as affirmative defenses as to any of the loans. Similarly, his remaining claims cannot be advanced as affirmative defenses with regard to the 1993 Loan and the 1996 Loan as the trial court properly granted summary judgment on these claims based on the application of the doctrine of account stated.
¶ 43 While the statute of limitations bars actions and affirmative defenses related to the 1993 and 1996 Loans, the claims regarding the 2001 Loan are not precluded. Mr. Brender raised concerns related to this loan in his answer which was filed only 16 months after the 2001 Loan transaction occurred.
¶ 44 Remaining Claims. In the first of three memorandum opinions, the trial court granted summary judgment dismissing Mr. Brender's claim under the Consumer Protection Act, chapter 19.86 RCW, as to the 1993 Loan, the 1996 Loan, and the 2001 Loan. The court also dismissed Mr. Brender's claims involving the 1993 Loan and the 1996 Loan. These claims alleged fraud, misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. The court reasoned that summary judgment had been entered on these claims based on the doctrine of account stated and the statute of limitations. As a result, we look to the 2001 Loan in order to determine whether the court erred by dismissing the same claims as to that loan.
¶ 45 Consumer Protection Claim. To prevail on a private claim under the Consumer Protection Act, the claimant must establish: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) having a public interest impact; (4) which results in injury to the claimant or his or her business; and (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 780, 719 P.2d 531 (1986).
¶ 46 Assuming that Mr. Brender has presented sufficient evidence to defeat a motion for summary judgment on all of the other factors, Mr. Brender cannot demonstrate *428 sufficient evidence to establish an effect on public interest. Factors examined when considering an effect on public interest include whether: (1) the defendant committed the acts in the course of his business; (2) the defendant advertised to the general public; (3) the defendant actively solicited this particular plaintiff; and (4) the plaintiff and the defendant had unequal bargaining positions. Id. at 790-91, 719 P.2d 531.
¶ 47 Although Mr. Brender alleges various acts by CVB, there is no evidence indicating that CVB advertised these loans to the public or that this was anything more than a breach of contract claim between private parties. Mr. Brender argues that he had a longstanding relationship with a loan officer at CVB and that all of the alleged wrongful acts took place behind closed doors. In short, there is no evidence suggesting that these allegations are likely to occur with other members of the public.
¶ 48 Fraud, Misrepresentation, Breach of Contract, and Covenant of Fair Dealing. The trial court dismissed Mr. Brender's claims for fraud, misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. In this appeal, Mr. Brender does not marshal authorities and argument showing that the court erred by dismissing these claims. For that reason, we will not address these issues on appeal, which are deemed abandoned. Seattle-First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 243, 588 P.2d 1308 (1978).
¶ 49 In summary, we affirm the decisions of the trial court.
WE CONCUR: SWEENEY, A.C.J., and SCHULTHEIS, J.