[No. 77708-0.   En Banc.]
Argued September 12, 2006.     Decided November 16, 2006.

Cashmere Valley Bank, *Respondent*, v. Terry B. Brender, *Petitioner*.

*J. Kevin Bromiley* and *James M. Danielson* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for petitioner.

*Brian A. Walker* (of *Ogden Murphy Wallace, P.L.L.C.*), for respondent.

¶1 C. JOHNSON, J. — This case involves an exemption from the federal Truth in Lending Act (TLA) disclosure requirements under 15 U.S.C. § 1603 where a loan is primarily for business, commercial, or agricultural purposes. In this case, the funds were applied to two purposes: a purpose exempt from disclosure requirements and a purpose subject to disclosure requirements. We find that the loan's primary purpose was for business and therefore exempt from the TLA. We affirm the Court of Appeals.

## FACTS

¶2 In 1993, Terry Brender was embroiled in an expensive divorce.[1] That same year, Cashmere Valley Bank (CVB) brought suit against him to collect on four separate unsecured business loans. Brender entered into a new loan agreement with CVB and consolidated the balance of approximately $203,000 of the defaulted business loans with an additional $150,000. Brender used the $150,000 to settle his divorce and obtain his wife's interest in a shake mill and orchard business.[2] Brender gave CVB a security interest in the orchard and shake mill properties to secure the 1993 loan.

¶3 As part of this 1993 loan transaction, Brender signed an agreement representing and warranting that this new

---

[1] Two sets of Clerk's Papers (CP) were filed in this case. The two sets include some of the same documents and use an overlapping numbering system. One set was filed on May 13, 2004. A second set was filed on October 5, 2004. For the sake of clarity, they will be referred to based on the month in which they were filed: May CP or October CP.

[2] The trial court found that Brender owed approximately $150,000 to his soon-to-be ex-wife and that this obligation was secured by "some type of lien" against the orchard and mill properties. October CP at 250. By transferring the funds to her, Brender obtained a quitclaim deed on the orchard, mill, and home. May CP at 329.

loan was primarily for business purposes.[3] CVB then dismissed its collection action. The loan was renewed at maturity in 1996. At that time, the bank obtained additional security in Brender's mobile home. October CP at 350. In 1999, Brender borrowed additional funds from CVB. In 2001, the 1996 and 1999 loans were consolidated into one loan. During all of this time, Brender made payments to the bank. Brender then defaulted on the 2001 loan, and the bank instituted this suit to collect the balance due on the 2001 loan and to foreclose on the collateral pledged.

¶4 Brender alleged affirmative defenses and several counterclaims, including violation of the TLA. The trial court summarily dismissed Brender's request to have the loans rescinded, concluding the loans were obtained primarily for commercial rather than consumer purposes and therefore exempt from the disclosure requirements under the TLA. The Court of Appeals affirmed.

## ANALYSIS

¶5 The purpose of the TLA[4] is to enhance the "informed use of credit" by means of "a meaningful disclosure of credit terms . . . ." 15 U.S.C. § 1601(a). This disclosure enables the consumer "to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." *Id.* For loans that fall within the TLA's scope, lenders must make certain disclosures and provide borrowers with a right of rescission notice. Truth in Lending (Regulation Z), 12 C.F.R. pt. 226. Consumer transactions, for which the disclosure requirements apply, are defined as those primarily for personal, family, and household purposes. 15 U.S.C. § 1602(h).

---

[3] For the purpose of deciding the cross motions for summary judgment, the trial court concluded that the purpose of the $150,000 was consumer in nature. CVB does not argue that this written representation is determinative of the outcome here.

[4] 15 U.S.C. §§ 1601-1667f.

¶6 At issue in this case is the provision providing for an exemption to the disclosure requirements. This provision provides: "This *subchapter* [15 U.S.C. §§ 1601-1667f] does not apply to the following: (1) Credit transactions involving extensions of credit *primarily* for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations." *Id.* § 1603 (emphasis added).

■ ¶7 As recognized in the Court of Appeals decision, the approach to determining a loan's purpose overlaps to some degree but falls into three basic categories.[5] In a straightforward mathematical inquiry, some courts look strictly to the ends to which borrowed funds were used. *See Stillman v. First Nat'l Bank of N. Idaho*, 117 Idaho 642, 791 P.2d 23 (1990); *Bokros v. Assocs. Fin., Inc.*, 607 F. Supp. 869, 871 (N.D. Ill. 1984). Courts look to where the loan proceeds went and compare the amount going to business purposes with those used for personal purposes. The strength of this method is its simple definition of "primarily": if more than half the funds loaned are for an exempt purpose, then the exemption applies. *E.g.*, *Bokros*, 607 F. Supp. at 871 (loan exempt where $9,000 of $17,000 borrowed had business purpose).

¶8 We agree with the Court of Appeals that based on the arguments and circumstances presented by the parties, the quantitative method is the appropriate means for deciding if this loan is subject to the TLA's disclosure requirements. For the purpose of deciding the cross motions for summary judgment, the trial court concluded that the purpose of the

---

[5] The Court of Appeals discussed three methods by which courts have determined the primary purpose of a loan before settling on the quantitative method. *Cashmere Valley Bank v. Brender*, 128 Wn. App. 497, 503-06, 116 P.3d 421 (2005). Courts using the "original purpose approach" examine "the original character of the loan and the predominating purpose of the loan." *Id.* at 504 (citing *Toy Nat'l Bank v. McGarr*, 286 N.W.2d 376 (Iowa 1979)). Under the "all circumstances approach," the court undertakes a factual analysis. *Id.* at 504-05 (citing *Conrad v. Smith*, 42 Wn. App. 559, 561-62, 712 P.2d 866 (1986)). The Court of Appeals favored the "quantitative approach." Under this approach, a court looks to whether the borrower used the majority of the loan proceeds for a commercial or consumer purpose. *Id.* at 503 (citing *Bokros v. Assocs. Fin., Inc.*, 607 F. Supp. 869 (N.D. Ill. 1984)).

$150,000 was consumer in nature.[6] The trial court treated the remaining $200,000 in proceeds as a refinance of business debt. Even assuming the $150,000 portion of the loan was personal, the majority of the funds therefore went to exempt purposes, and the transaction was exempt because the loan was primarily for business purposes. "If 'primarily' is to have any substantive content (as it must), in the context of a loan . . . taken out for two discrete purposes—it must refer to the use of more than half the funds." *Id.* at 872. Applying this method to our case, Brender's loan was exempt from the TLA's disclosure requirements.[7]

■ ¶9 Brender includes a request for attorney fees pursuant to 15 U.S.C. § 1640(a)(3):

(a) Individual or class action for damages; amount of award; factors determining amount of award.

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

. . . .

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of

---

[6] The parties here make the same assumption. However, while it may be true that the payment settled Brender's divorce, Brender appears to have used the funds to obtain his wife's interest in business assets. CVB raises no argument that these funds were for business purposes.

[7] We levy no opinion on whether the quantitative method is appropriate outside these circumstances. A factual inquiry may reveal that a loan has both exempt and nonexempt purposes, even where the loan was not a consolidation of prior separate loans. *See Nelson v. Farm Credit Servs. of N.D.*, 380 F. Supp. 2d 1061 (N.D. 2005) (loan not exclusively for agricultural purposes). Similarly, the stated purpose of a loan is meaningful, though it can be misleading. *See Gombosi v. Carteret Mortgage Corp.*, 894 F. Supp. 176, 181 (E.D. Pa. 1995). In *Gombosi*, a personal home refinancing actually had a business purpose where it was done at an interest rate a full percentage point higher, satisfaction of the existing mortgage was an express condition of the new business loan, and payment of outstanding taxes was a necessary prerequisite to protect the first mortgage rights of the new lender. The quantitative method for defining "primarily" is appropriate if the loan clearly has dual purposes.

this title, *the costs of the action, together with a reasonable attorney's fee as* determined by the court . . . .

(Emphasis added.) Subsection (4) lists considerations relevant to the amount of the award.

¶10 Brender does not have a right of rescission because his 1993 loan was not subject to the TLA's disclosure requirements. Hence, no award of attorney fees is justified under the terms of 15 U.S.C. § 1640(a)(3).

## CONCLUSION

¶11 We adopt the quantitative approach where loans have dual purposes: if the loan does have exempt and nonexempt purposes, the loan is exempt if a majority of the proceeds were allocated to business, commercial, or agricultural purposes. Because the 1993 loan was primarily for an exempt purpose, Brender cannot seek rescission under the TLA. We affirm the Court of Appeals.

ALEXANDER, C.J.; MADSEN, SANDERS, BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and HOUGHTON, J. PRO TEM., concur.